Charles M. THIBEAULT,
Plaintiff, Appellant,

v.

SQUARE D COMPANY,
Defendant, Appellee.

No. 91–2026.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1992.

Decided March 30, 1992.

Joseph M. Orlando, with whom Brian S. McCormick and Orlando & Associates were on brief, for plaintiff, appellant.

John F. Toomey, with whom Clark W. Yudysky and Gallagher & Gallagher, P.C., Boston, Mass., were on brief, for defendant, appellee.

Before SELYA, Circuit Judge,
ALDRICH and BOWNES, Senior Circuit Judges.

SELYA, Circuit Judge.

Plaintiff-appellant Charles M. Thibeault challenges the entry of summary judgment in favor of defendant-appellee Square D Company. The linchpin of this appeal is whether the district court lawfully precluded certain expert testimony which Thibeault hoped to introduce at trial. This issue is of paramount importance because, in the absence of such evidence, Thibeault concedes that the record supports summary disposition of his civil action. Concluding that the trial court did not abuse its discretion in excluding the proffer, we affirm.

## I. BACKGROUND

In December 1985, a punch press crushed appellant's left arm. The press was equipped with a foot switch manufactured by Square D. In late 1988, appellant sued Square D for damages. His complaint posited several theories of liability involving the design and manufacture of the foot switch.

In April 1989, Square D served interrogatories under Fed.R.Civ.P. 33. Interrogatory number 11 asked Thibeault to identify the experts he would call at trial and to elucidate upon the substance of their expected testimony. In July 1989, Thibeault answered the interrogatory by writing: "The plaintiff has not yet selected experts, but reserves the right to supplement this interrogatory timely [sic] before trial."

On November 26, 1990, a pretrial conference was held. Fed.R.Civ.P. 16(b). Counsel agreed to try the case in September 1991. The court explained the workings of its rolling trial list. The docket entry reflects that the parties would be "ready for trial as of September 1 [1991]."

On August 2, 1991, Square D filed its motion for summary judgment. On August 13, the district court issued two (potentially conflicting) orders. The court set the case for trial on a rolling list beginning September 3, 1991, promising only twenty-four hours notice of the start of trial. The court also set the summary judgment motion for hearing on October 8, 1991. Despite the odd juxtaposition of dates, there was not a peep of protest—or even an inquiry—from any of the parties. On August 19, appellant filed various discovery-related motions. On September 10, appellant filed both his response to Square D's summary judgment motion and a motion to remove the case from the current trial list.

On September 11, the court informed counsel that the case would be reached for trial on September 16. On September 12, appellant served a thirty-seven-page-long supplementary answer to Interrogatory No. 11. The supplementary answer named seven experts, including three engineers who, appellant proposed, would testify as

to liability. On September 13, Square D filed a motion to preclude appellant's use of the experts' testimony. The primary basis for this motion was that Thibeault's opposition to the motion for summary judgment intimated a shift in the prevailing winds. Square D contended that Thibeault was belatedly attempting to convert the case's focus from electrical malfunction, attributable to faulty manufacture and design, to a supposed deficiency in the foot switch's mechanical guards. Square D also cited the lack of a timely disclosure of the experts' identities.

When the parties appeared for a final pretrial conference on September 13, the district judge denied Thibeault's motion to postpone the trial. Next, citing Thibeault's tardiness in supplementing his answers to interrogatories and his last-minute revision of his case concept, the judge granted Square D's motion to preclude the proffered expert testimony. The judge then considered, and allowed, Square D's motion for summary judgment. Thibeault's case proceeded to trial against another defendant. It was settled.

There are two issues on appeal. The first issue centers around timing, that is, whether the district court acted permissibly in electing to hear and determine Square D's Rule 56 motion at the final pretrial conference. The second issue centers around the propriety of the district court's preclusionary order. Although the issues are interrelated, we examine them sequentially.

## II. THE HEARING ON SUMMARY JUDGMENT

Appellant claims that the lower court erred in hearing the summary judgment motion on September 13. Neither of appellant's two reasons possesses convictive force.

### A. *Lack of Time for Discovery.*

■ Appellant's lament that summary judgment was premature because he was not afforded sufficient time for discovery is idle. Admittedly, lawyers sop up time like a sponge soaks up water. There is, however, a difference; that is the purpose of the sponge. We firmly believe there must be limits to the amount of time an attorney can command for pretrial preparation.[1] By September of 1991, the case had been pending for well over two and one-half years. Exercising due diligence, thirty-three months is more than enough time to conduct pretrial discovery in a run-of-the-mill product liability action.

To be sure, appellant tries to shift the blame, claiming that Square D's evasion of a deposition was the principal reason for the soporific pace. The claim is a catchpenny. The record shows that, over the course of time, Square D's deposition was scheduled on several occasions. Each time, it was postponed by mutual consent. Given the fact that appellant invariably agreed to the postponements, never filing a timeous motion to compel Square D to attend the deposition, his claim of deprivation has a hollow ring. A litigant who has not actively pursued discovery cannot be heard to complain that too little discovery was had.

### B. *The Scheduling Snafu.*

■ Appellant's remaining point has more to commend it. He assails the district court's sudden decision to hear the Rule 56 motion on September 13 after having originally scheduled a hearing for October 8. We review a district court's decisions concerning pretrial matters, such as docket control and case management, with a deferential mien. *See In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1019 (1st Cir.1988). The appellant carries the burden of showing an abuse of discretion—and the burden is a heavy one. *See id.; see also Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988) (discussing general pa-

---

1. One is reminded of a stanza from the seventeenth-century English poem:
   > But at my back I always hear
   > Time's winged chariot hurrying near;
   > And yonder all before us lie
   > Deserts of vast eternity.
   Andrew Marvell, *To His Coy Mistress* (1652).

rameters for an abuse-of-discretion inquiry). Appellant has failed to shoulder this heavy burden.

Appellant's bellwether case is *Marshak v. Tonetti*, 813 F.2d 13 (1st Cir.1987) (per curiam). There, we found an abuse of discretion when the district court unilaterally accelerated the trial date by several weeks without advance notice to counsel. *Id.* at 18. *Marshak*, however, is not a fair congener. In the case at hand, appellant received ample notice—ten months, more or less—that his case would likely be tried in September of 1991. Despite the confusion that may have been created by the court's designation of October 8 as the scheduled date for hearing the summary judgment motion, the court's repeated warnings that the case could be reached for trial at any time on or after September 3 obviously took precedence. Appellant, aware that the case was on tap for trial, was also aware, constructively if not actually, that the court, initially, would dispose of all pending motions.

■ Moreover, in mid-August, when the notices issued, appellant inexplicably failed to call the district court's attention to the apparent conflict between the presumptive trial date and the presumptive hearing date. While courts should take care in integrating the scheduling of motions with the scheduling of trial, particularly where the judge prefers to use a rolling trial list, we think that Thibeault, through inaction, forfeited any right to hoist the red flag of prejudicial error. We have said, time and again, that a litigant has a clearcut obligation to ask the district court for any relief that might be thought due before seeking such relief on appeal. *See, e.g., McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 22 (1st Cir.1991), *petition for cert. filed*, 60 U.S.L.W. 3601 (U.S. Feb. 14, 1992); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 43–44 (1st Cir.1991); *Beaulieu v. United States, IRS*, 865 F.2d

1351, 1352 (1st Cir.1989). Here, although the court's scheduling left something to be desired, appellant failed seasonably to alert the court to any special problems created by the scheduling. Accordingly, it does not lie in Thibeault's mouth to complain that he was misled.[2]

## III.  PRECLUSION OF EXPERT TESTIMONY

At oral argument, Thibeault's counsel conceded that if the preclusion of expert testimony was appropriate, summary judgment was properly entered. But, he argues that preclusion was unbefitting. We turn to this pivotal issue.

### A.  *Standard of Review.*

■ In reviewing a trial court's sanction order concerning a discovery-related matter, an abuse-of-discretion standard controls. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); *Jensen v. Frank*, 912 F.2d 517, 524 (1st Cir.1990). We use this yardstick to measure both the court's finding that a discovery-related rule or order was violated and, if it was, to assess the appropriateness of the sanction imposed. The question is not whether we, as an original matter, would have utilized the same sanction, whether some harsher sanction might have been warranted, or whether some less painful sanction might have sufficed; rather, the question is whether the district court, in choosing the particular sanction, misused its discretionary powers. *See National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780.

Our oversight must proceed in a manner highly respectful of the trial court's intimate knowledge of the case's ebb and flow. Indeed, so deferential is the standard that, in virtually every case in which we have reviewed a trial court's sanction order un-

---

**2.**  Assuming, for argument's sake, that the court below acted precipitately in advancing the summary judgment motion on its docket, any error was harmless. Given appellant's gross violation of his duty to supplement his answers to interrogatories in a timely fashion, the preclusionary order would nonetheless have been indicated even if the trial was twenty-five days away rather than three days away. The fact remains that appellant dawdled inexcusably by delaying for over two years in engaging experts and filing his supplementation.

der Fed.R.Civ.P. 26(e) (the rule at issue in the instant case), we have affirmed the lower court's exercise of its informed discretion. *See, e.g., Freund v. Fleetwood Enters., Inc.,* 956 F.2d 354, 358 (1st Cir. 1992); *Smith v. Massachusetts Inst. of Technology,* 877 F.2d 1106, 1112 (1st Cir.), *cert. denied,* 493 U.S. 965, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989); *Northern Heel Corp. v. Compo Indus., Inc.,* 851 F.2d 456, 468 n. 5 (1st Cir.1988); *Laaperi v. Sears, Roebuck & Co.,* 787 F.2d 726, 733 (1st Cir.1986); *Johnson v. H.K. Webster, Inc.,* 775 F.2d 1, 8 (1st Cir.1985). The basis for such deference is rock solid. "District judges live in the trenches, where discovery battles are repeatedly fought. They are, by and large, in a far better position than appellate tribunals to determine the presence of misconduct and to prescribe concinnous remedies." *Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076, 1082 (1st Cir. 1989).

### B. *Pretrial Discovery of Expert Testimony.*

Recognizing the importance of expert testimony in modern trial practice, the Civil Rules provide for extensive pretrial disclosure of expert testimony.[3] This sort of disclosure is consonant with the federal courts' desire to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958); *accord Anderson v. Cryovac, Inc.,* 862 F.2d 910, 929 (1st Cir.1988); *San Juan Litigation,* 859 F.2d at 1010–12. In the arena of expert discovery—a setting which often involves complex factual inquiries—Rule 26 increases the quality of

trials by better preparing attorneys for cross-examination, *Smith,* 877 F.2d at 1111, minimizing surprise, *Laaperi,* 787 F.2d at 733; *Johnson,* 775 F.2d at 7, and supplying a helpful focus for the court's supervision of the judicial process. *See Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1549–50 (Fed.Cir.1984); *Weiss v. Chrysler Motors Corp.,* 515 F.2d 449, 457 (2d Cir.1975). In short, Rule 26 promotes fairness both in the discovery process and at trial. For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse.

■ This circuit has recommended a straightforward approach to ensure that the spirit of open discovery embodied in Rule 26 is not undermined either by evasion or by dilatory tactics. In reviewing a contention that answers were not properly supplemented within the strictures of Rule 26(e), a court "should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the [opposing party] to formulate a response." *Johnson,* 775 F.2d at 8. To this we might add that the reason for the proponent's failure to update his discovery seasonably, as Rule 26(e)(1) requires, should also be carefully examined. *See Davis v. Marathon Oil Co.,* 528 F.2d 395, 403 (6th Cir.1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). Here, the appellant strives to convince us, by a variety of arguments, that the court below improperly calibrated the scales in ordering preclusion. We are not persuaded.

### C. *Appellant's Asseverations.*

Although appellant's points are imbricated, we discern four central themes in his

---

**3.** This appeal implicates Rules 26(b) and (e). Those rules provide in pertinent part:

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. Fed.R.Civ.P. 26(b)(4)(A)(i).

A party is under a duty seasonably to supplement [a discovery response that was complete when made to include information thereafter acquired] with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony. Fed.R.Civ.P. 26(e)(1).

asseverational array. We consider each theme *seriatim.*

1. *Lack of Authority.* Appellant contends that since the district court did not order him to supplement his interrogatory answers by a specific date, he did not violate a court order and, therefore, the sanction of preclusion was improper. This claim is unfounded.

■ While Fed.R.Civ.P. 37(b) requires that a court order must be in effect, and then violated, as a prerequisite for the imposition of sanctions thereunder, *R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 15 (1st Cir.1991), no such requirement exists under Rule 26(e). The rule itself furnishes fair warning. Thus, when Rule 26(e) is flouted, district courts possess the power to impose sanctions without first issuing a firm discovery deadline or an admonitory order. *See Bradley v. United States,* 866 F.2d 120, 124 n. 6 (5th Cir.1989); *Outley v. City of New York,* 837 F.2d 587, 589 (2d Cir.1988); *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980); 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2050 (1970).

■ Moreover, a district court confronted with a violation of Rule 26(e) can fashion an appropriate sanction from a wide range of options. Preclusion is one of these options. *See* Fed.R.Civ.P. 26 advisory committee's note ("The duty [to supplement] will normally be enforced ... through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate."). Clearly, then, the trial court possessed the power to preclude appellant's proffered expert testimony despite the lack of an antecedent order.

■ 2. *Absence of Bad Faith.* Appellant also tells us that, because the court below did not explicitly find willfulness or bad faith, preclusion was improper. This remonstrance misapprehends the require-

ments for preclusion of expert opinion evidence. The federal courts' supervision of the discovery process, and the courts' concomitant authority to upbraid those who do not play by the rules, is rooted in the need for maintaining the integrity of the trial process. Hence, the impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules. *See Barreto v. Citibank, N.A.,* 907 F.2d 15, 16 (1st Cir.1990) (per curiam). Thus, in the Rule 26(e) context, preclusion can be imposed in response to a party's subversion of the trial process, even if the responsible party was guilty of laxity rather than bad faith.[4] *See Johnson,* 775 F.2d at 8 (expert testimony may be precluded if there is "evasion or concealment, *intentional or not,* on the part of the litigant offering the evidence") (emphasis supplied); *Rosemount,* 727 F.2d at 1549 (similar); *cf. Anderson,* 862 F.2d at 923 (party claiming "misconduct" in pretrial discovery sufficient to warrant relief under Fed.R.Civ.P. 60(b)(3) need not show that opponent acted in bad faith).

3. *Counsel's Conduct in Other Cases.* Appellant's penultimate assignment of error hawks the idea that the district judge impermissibly considered the failure of appellant's counsel, Joseph M. Orlando, to supplement answers to expert interrogatories in a separate suit. We set the stage.

In the course of ordering preclusion in this case, the judge remarked that "[t]his is not the first time with your office that this maneuver has been foisted upon this court." The comment apparently had a solid basis in fact: Orlando handled at least one earlier case in which the district court sanctioned him for supplementing answers to expert witness interrogatories in an untimely manner. *See Ferrara v. Balistreri*

---

**4.** Although a party's good faith may not suffice to shield him from the imposition of a preclusionary sanction under Rule 26(e), the good faith of the proponent of the testimony, or its absence, is nonetheless a relevant factor to be weighed by the trial court in choosing a sanc-

tion. *Cf. Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1076 (1st Cir.1990) (considering lack of willfulness in assessing the appropriateness of a sanction for failure to attend pretrial conference).

& *DiMaio, Inc.*, 105 F.R.D. 147 (D.Mass. 1985).[5]

In considering sanctions for lapses in the course of pretrial discovery, a district court should consider all the circumstances surrounding the alleged violation. *See Link v. Wabash R.R.*, 370 U.S. 626, 635, 82 S.Ct. 1386, 1391, 8 L.Ed.2d 734 (1962). The totality of the circumstances can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy. *See, e.g., Moody v. Miller*, 864 F.2d 1178, 1181 (5th Cir.1989) (per curiam) (in imposing sanctions, district court could properly consider plaintiff's "past history with the federal courts"); *cf. United States v. Hastings*, 847 F.2d 920, 925 (1st Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). Once the district court has recognized a pattern of misbehavior on an attorney's part, the court would be blinking reality in not taking counsel's proven propensities into account. We rule, therefore, that a trial court may properly give some consideration to a lawyer's behavior in previous cases when determining whether to accept the attorney's explanation of why he failed to comply with Rule 26(e) in a current case.[6]

Appellant contends that allowing district courts this freedom will result in punishing an innocent client for his attorney's peccadilloes. To some extent, that is true. We have stated before, however, and today reiterate, that while "[t]he argument that the sins of the attorney should not be visited upon the client is a seductive one, ... its siren call is overborne by the nature of the adversary system." *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 16 (1st Cir.1983); *accord Link*, 370 U.S. at 633–34, 82 S.Ct. at 1390–91; *Omaha Indian Tribe, Etc. v. Tract I—Blackbird Bend Area*, 933 F.2d

1462, 1471 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 379, 116 L.Ed.2d 331 (1991); *Barreto*, 907 F.2d at 17; *Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410, 413 (1st Cir.1981), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Pease v. Peters*, 550 F.2d 698, 701 (1st Cir.1977).

*4. Appropriateness of the Sanction.* We arrive, finally, at the nub of the appeal. Appellant insists that his delay in supplementing the answers was not sufficiently arrant to justify the imposition of so severe a sanction. Having carefully reviewed the entire record, we cannot say that the trial court abused its discretion in precluding the use of the proffered testimony.

Appellant hypothesizes that the lower court, rather than barring the evidence, could have done justice merely by postponing the trial. But, in cases such as this, a continuance is often ineffectual as a sanction and unfair to both the court and the opposing party. *See, e.g., Freund*, 956 F.2d at 358; *Bradley*, 866 F.2d at 126. If continuances were granted as a matter of course for violations of Rule 26(e), the rule could always be disregarded with impunity. Courts could not set their calendars and conscientious litigants could not count on the stability of trial dates previously established. For these reasons, we refuse to rule, as a matter of law, that selecting a continuance was the only condign remedy for appellant's late disclosure.

Turning to the sanction actually selected, we start by remarking that the focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure. *See Johnson*, 775 F.2d at 7 n. 7. Many courts—this court included—have recognized that the introduction of new expert testimony on the eve

---

5. Square D has filed a motion to enlarge the record in an attempt to show yet a third instance of egregiously late supplementation on Orlando's part. We think that this brings coal to Newcastle and, therefore, deny the motion.

6. We emphasize that this is but one of many factors to be considered in passing upon the

question of sanctions. We also note that, in the case at hand, there is nothing to indicate that the judge's decision to preclude the evidence turned on this point. Indeed, wholly apart from counsel's track record, preclusion was a supportable remedy for late supplementation on the record before the district court.

of trial can be seriously prejudicial to the opposing party. *See Freund*, 956 F.2d at 357–59; *Bradley*, 866 F.2d at 125; *Hagans v. Henry Weber Aircraft Distribs., Inc.*, 852 F.2d 60, 64 (3d Cir.1988). We think it is beyond dispute that an eleventh-hour change in a party's theory of the case can be equally harmful, perhaps more harmful, from the standpoint of his adversary. *See Smith*, 877 F.2d at 1111; *Northern Heel*, 851 F.2d at 468 n. 5; *Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 857–58 (7th Cir.1977).

In this case, had the court allowed the tardy supplementation, Square D would have had to scrap much of its earlier preparation in favor of a frantic, last-minute scramble to investigate the emergent witnesses, counter their testimony, and rebut a new and different case concept. Significantly, this full-court press would have taken place during the last few days of the pretrial period, forcing Square D to rush its final trial preparations. Although appellant suggests that Square D could spend day and night attempting to cure the havoc which supplementation, if allowed, would have wrought, we do not think it is either reasonable or fair to expect a litigant to bear so onerous a burden.

Furthermore, there was no good cause for appellant's delay. When supplementation finally occurred, the interrogatories were almost two and one-half years old, the case was fast approaching its third birthday, and the accident was nearing its sixth anniversary. Thibeault cannot excuse his procrastination by citing the fact that Square D had not been deposed. *See supra* Part II(A). He has identified no other unusual circumstance that handicapped his ability to prepare his case in a timely fashion. In point of fact, appellant had ample time to retain experts; he actually hired one expert, Darry Holt, as early as June 7, 1991. It is simply inexcusable for a party, already late in responding, not to supplement his interrogatory answers, as required by Rule 26(e), as soon as practicable after retaining a new expert.[7] *See Fashion House*, 892 F.2d at 1080–82; *Swajian v. General Motors Corp.*, 916 F.2d 31, 37 (1st Cir.1990).

Given the appellant's egregious breach of Rule 26(e), we do not believe that the district court exceeded its lawful powers in employing a preclusionary sanction. While we acknowledge that preclusion of expert testimony is a grave step, not to be undertaken lightly, *Jackson v. Harvard Univ.*, 900 F.2d 464, 469 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990), it is nonetheless among the arrows in the trial court's Rule 26(e) quiver, available for use in suitable cases. *See Freund*, 956 F.2d at 357; *Northern Heel*, 851 F.2d at 468 n. 5; *Johnson*, 775 F.2d at 7; 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2050 (1970); *see also National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781 ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases."). Here, the importance of the evidence to appellant's case was heavily outweighed by unfair prejudice to Square D and the lack of any semblance of a good excuse for so raw a violation of the duty to supplement.

---

**7.** Appellant complains that the district court never established a deadline for identifying experts or for the close of discovery and that, therefore, he was free to supplement at any time. This assertion misperceives the thrust of Rule 26(e), which requires "seasonabl[e]" supplementation of discovery regarding expert witnesses. That said, we urge, in the strongest possible terms, that district courts (as, indeed, is most frequently done in this circuit) set pretrial deadlines for disclosing the identities of experts. In the same vein, we heartily endorse the utilization of discovery closure dates, available under Fed.R.Civ.P. 16(b)(3), as a case management tool. After all, the adversarial cast of our system of justice, combined with the increasingly complex and unwieldy nature of modern litigation practice, frequently require that trial courts provide strong guidance to counsel and assume hands-on control of the discovery process. *See San Juan Litigation*, 859 F.2d at 1011. Either of the recommended measures—fixing a deadline for exchanging experts' identities or setting a date for the close of discovery—would in all probability have avoided, or at least simplified, the present controversy. Ideally, district courts should routinely employ both measures.

To sum up, the court's order, though stern, plainly effectuated the goals of the Civil Rules. Consequently, we cannot say, under the totality of the circumstances, that the district court abused its broad discretion in determining either that Thibeault failed seasonably to supplement his answers as required by Rule 26(e) or that preclusion was an appropriate response to Thibeault's laggardness.

## IV. CONCLUSION

We need go no further. The district court acted within the proper scope of its lawful powers in derailing appellant's belated effort to recruit new experts and reshape the contours of the case. Given appellant's concession that *brevis* disposition was inevitable if the preclusion of the experts' testimony was supportable, the judgment below must be

*Affirmed.*