<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-1599

                     LUIS BONILLA, ET AL.,

                     Plaintiffs, Appellees,

                               v.

                     VOLVO CAR CORPORATION,

                     Defendant, Appellant.
                      ____________________

No. 97-1600

                     LUIS BONILLA, ET AL.,

                     Plaintiffs, Appellees,

                               v.

               TREBOL MOTORS CORPORATION, ET AL.,

                     Defendants, Appellees.
                           __________
 
NEREIDA MELENDEZ, RAFAEL PEREZ-BACHS, RUBEN T. NIGAGLIONI, MANUEL
FERNANDEZ-BARED, JEANNE HABIB-FIGUEROA, ABELARDO RUIZ-SURIA,
FRANCISCO OJEDA, ANTONIO A. ARIAS-LARCADA and McCONNELL VALDES,

                          Appellants.
                     _____________________

No. 97-1790

                     LUIS BONILLA, ET AL.,  

                     Plaintiffs, Appellees,

                               v.

               TREBOL MOTORS CORPORATION, ET AL.,

                     Defendants, Appellees.

                           __________

   RICARDO GONZALEZ-NAVARRO and CONCHITA NAVARRO DE GONZALEZ,

                    Defendants, Appellants.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

      [Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.
___________________
    Michael J. Rovell with whom Jewel N. Klein and Law Offices of
Michael J. Rovell were on brief for defendants Ricardo Gonzalez-
Navarro and Conchita Navarro de Gonzalez.
    Allan Kanner with whom Conlee Schell Whiteley, Allan Kanner &
Associates, P.C., Paul H. Hulsey, Frederick J. Jekel, Theodore H.
Huge, Ness, Motley, Loadholt, Richardson & Poole, P.A., Jose F.
Quetglas Jordan, Eric Quetglas Jordan, Zygmunt Slominski, Quetglas
Law Offices, Daniel Harris and Law Offices of Daniel Harris were on
brief for plaintiffs Luis Bonilla, et al.

July 28, 1998

 BOUDIN, Circuit Judge.  This opinion is a companion to
two others issued today, growing out of the same district court
case.  In No. 97-1135, we are reversing the principal judgment
against Volvo.  In Nos. 97-1140 and 97-1143, the principal judgment
against Trebol and the Gonzalez defendants is being vacated and the
matter remanded for further proceedings as to damages, subject to
the possibility that proceedings against Trebol may be stayed under
the bankruptcy laws; that opinion also dismisses the plaintiffs'
cross-appeal in No. 97-1145.
 This final volume in the trilogy concerns appeals by
Volvo (No. 97-1599), Volvo's attorneys (No. 97-1600), and the
Gonzalez defendants (No. 97-1790) directed to a sanctions order and
an attorney's fee order, entered together in the district court on
March 27, 1997.  The effect of the two orders taken together was to
award attorney's fees and costs in favor of the plaintiffs in the
amount of $3,518,844.41.  In setting forth the history pertinent
to the orders under review, we assume familiarity with our two
opinions issued this day in Nos. 97-1135, 97-1140, 97-1143 and 97-
1145.
    Between the filing of the original complaint on June 16,
1992, and the start of trial on June 24, 1996, the plaintiffs
conducted extensive discovery.  Rancorous disputes ensued.  
According to the district court, there are 500 docket entries that
relate to discovery matters.  On several occasions the district
court made preliminary references to alleged misconduct by one or
more of the defendants with a promise of future attention to the
matter and possible sanctions.
    After discovery was completed and the case proceeded to
trial, the issue of sanctions reemerged.  On July 2, 1996, the
seventh day of trial, the district judge announced, sua sponte but
outside the presence of the jury, that he had examined documents
filed under seal by Trebol in August 1995 comprising invoices sent
by AUM to Trebol and purporting to be genuine Volvo invoices for
cars shipped by Volvo to Trebol.  A number of these invoices, as we
now know, included inflated figures significantly exceeding the
original invoice prices.  The true prices were shown on invoices
for the same sales sent directly by Volvo to Trebol.
    Volvo had earlier resisted producing to plaintiffs its
own copies of the invoices it had sent directly to Trebol on the
ground that they would simply duplicate invoices that Trebol itself
had been asked to produce.  On the morning of July 2, the district
judge said that when Volvo objected to this earlier production
request, Volvo "knew" that its own production of the invoices was
not a moot issue and also "knew" that the invoices produced by
Trebol did not include specified cost information.  The court said
that it would keep this in mind when deciding on the nature of
sanctions to be imposed thereafter.  The next day, July 3, 1996,
the plaintiffs filed a motion for sanctions, and the court reported
that it would sanction Volvo by an instruction to the jury that it
could draw a negative inference that the unproduced documents were
harmful to Volvo's case.  The court issued an order to this effect
on July 12, 1996.
    Thereafter, during the trial, the district court limited
Volvo's attempt to cross-examine certain of plaintiffs' witnesses
on topics involving the relationship between Volvo and AUM.  The
judge was seemingly prompted by what he thought was Volvo's alleged
misconduct relating to the Volvo-Trebol invoices.  But it is clear
from the transcript that the question intermittently became
confused with a different objection made several times by the
plaintiffs during Volvo's cross-examination, namely, that Volvo had
not disclosed to plaintiffs information relating to payments
received by Volvo from AUM.
    Then, after receiving further information from Volvo, the
district court, on July 17, 1996, resolved this separate quarrel
and determined that Volvo had produced the Volvo-AUM payment
records.  On July 23, 1996, the court reverted to the original
dispute regarding the invoices and entered an order accepting the
explanation of Volvo's counsel that he had not known that the
invoices produced by Trebol were false AUM invoices and that he had
objected to plaintiffs' document request in good faith.  The court
said that it was withdrawing its earlier determination of
sanctions.  The jury was so advised, although Volvo says that it
was still prejudiced by the episode.
    Following the jury verdict on damages against Volvo on
July 30, 1996, plaintiffs filed a motion on August 15, 1996,
seeking attorney's fees and costs under RICO, 18 U.S.C.  1964(c).  
This motion was primarily directed against Volvo but stated in a
footnote that Trebol and the Gonzalezes were jointly and severally
liable for amounts owed by Volvo.  Like Volvo, Trebol and the
Gonzalezes opposed the motion.  On August 16, 1996, plaintiffs
filed another motion seeking attorney's fees and costs against
Volvo's counsel under 28 U.S.C.  1927 or, in the alternative,
under the court's inherent powers, as a sanction for vexatious
litigation.  Volvo opposed the motion for sanctions.
    At this time, no final judgment as to damages had yet
been entered against Trebol or the Gonzalez defendants and the
plaintiffs' August 16 motion did not make any such sanctions
request with respect to Trebol or the Gonzalez defendants.  There
were various additional filings, but no hearing.  On March 27,
1997, the district court issued the two orders that are the subject
of the present appeals.
    The first opinion and order ("the sanctions order"), is
70 pages long and is directed to plaintiffs' August 16, 1996,
motion against Volvo for attorney's fees and costs under 28 U.S.C.
1927 or under the court's inherent powers as a sanction for
vexatious litigation.  Although the plaintiffs' motion had sought
as a sanction to impose liability on Volvo's counsel, the court
noted that Volvo itself had opposed the motion and stated that
Volvo itself had engaged in sanctionable conduct and that all of
the co-defendants were responsible because they had conducted a
joint defense.
    The court then reviewed a series of incidents that it
deemed to evidence vexatious conduct, beginning with Volvo's
original objection to producing the Volvo-Trebol invoices.  The
court said that "Volvo's recalcitrance in producing the invoices it
sent to Trebol" meant that "the double invoicing [i.e., the false
AUM invoice scheme] nearly went undetected."  It conceded its
earlier withdrawal of sanctions based on this episode but said that
this merely affected jury instructions and "left open" the question
whether the court would impose sanctions on Volvo and its counsel
"for their negligence."
    The court went on to discuss under nine further headings
a number of other episodes in which Volvo had (according to the
court) improperly delayed proceedings or otherwise engaged in
misconduct.  These events include persistent objections to bringing
Swedish residents to be deposed in Puerto Rico, delay in providing
plaintiffs with a document index, failing to provide information
material to class certification, submission of Swedish documents
without translation, and frivolous motion practice, including a
motion that the court require all attorneys pro hac vice to sign
every filing.
    Although almost all of the examples involved Volvo, the
court concluded by finding that all the "codefendants' compliance
with their discovery obligations and their conduct generally during
this litigation were dilatory, uncooperative and obstructionist."  
As already noted, plaintiffs had not at this stage sought sanctions
against Trebol or the Gonzalez defendants, nor had the court warned
the defaulting defendants that it was now considering sanctions
against them.
    The court then turned to remedy.   Pointing out that the
plaintiffs were already entitled to attorney's fees and costs under
RICO, the court said that the only sanction it would impose for the
litigation misconduct of all of the defendants was as follows:
       [I]n adjudicating codefendants' objections
    to plaintiffs' motions for attorneys' fees,
    particularly with respect to the rates and the
    number of hours spent on this case, the Court
    will view plaintiffs' requests indulgently. .
    . .  Codefendants should now be barred from
    attempting to reduce those attorneys' fees by
    objecting to the rates and hours charged.  The
    Court will not permit plaintiffs to recover
    for fees that are patently excessive, but it
    will adjudicate plaintiffs' requests for
    attorneys' fees recognizing that plaintiffs'
    attorneys spent many additional hours
    litigating this case because of the
    codefendants' failure to produce all relevant
    information willingly, quickly, and without
    continuous prodding from the Court.

    In its second opinion and order ("the award order"), the
court addressed the amount of reimbursement due to the class fund
for plaintiffs' attorney's fees and costs under the RICO statute.  
RICO provides that an injured party may recover treble damages "and
the cost of the suit, including a reasonable attorney's fee."  18
U.S.C.  1964(c).  The district court read this provision to
include "reasonable" attorney's fees and those costs contemplated
by 28 U.S.C.  1920.
    In fixing reasonable attorney's fees, the court repeated
its earlier observation that as a sanction for abuse of discovery
practices, the court proposed to look indulgently at the hours
worked by plaintiffs' counsel and the rates that counsel sought to
charge.  It said that to the extent that the reasonableness of a
rate or the amount of time spent on the task was in dispute, the
court would resolve the matter in favor of the plaintiffs.  It then
made detailed computations as to specific hourly rates and hours
without further explicit reference to the sanction issue.   
    On its appeal, Volvo objects to the sanctions order and
the award order on a number of grounds:  that the district court
gave Volvo no notice that it was considering sanctions for conduct
other than that identified in plaintiffs' motion for sanctions;
that it wrongly failed to afford an evidentiary hearing on
misconduct issues; that Volvo had violated no court orders and did
not engage in deliberate misconduct and was not responsible for
misconduct of codefendants; and finally, that enhancing the
attorney's fees was neither a permissible nor a proportionate
sanction for the alleged misconduct.
    The Gonzalez defendants have also appealed, arguing that
the enhancement against them was improper on three grounds:  that
they had been given no notice or opportunity to be heard on
sanctions against them; that they could not be held responsible for
misconduct of Volvo; and that the court was not entitled to enlarge
attorney's fees for anyone's alleged misconduct and in any event
had granted excessive fees by resolving uncertainties in favor of
plaintiffs.  Because the Trebol companies were assertedly in
bankruptcy, they were not included in the judgment for attorney's
fees and costs, and Trebol has filed no appeal from this judgment.
    Before turning to the challenges by defendants to the
sanctions and award orders, we have to consider whether these
orders present live controversies in light of our reversal of the
principal judgment against Volvo and our vacation of the principal
judgment against the other codefendants.  See North Carolina v.
Rice, 404 U.S. 244, 246 (1971).  As to Volvo, the award order and
subsequent judgment granting attorney's fees and costs are
undermined by our earlier opinions:  under RICO, attorney's fees
and costs are awarded only to a plaintiff who establishes liability
and injury.  Because of our Volvo decision, plaintiffs now cannot
prevail against Volvo on the merits.
    The situation is otherwise as to the remaining
defendants.  As a result of their default and our ruling upholding
the sufficiency of the labeling claims, the remaining defendants
have been held liable to plaintiffs; and by defaulting those
defendants have also conceded an express factual allegation in the
complaint, namely, that as a result of defendants' violations the
plaintiff class members "have been injured in their property."  
Accordingly, there is no apparent reason why the attorney's fee
order should not be reviewable on the merits as to the Gonzalez
defendants (it was not reduced to judgment against Trebol).
    As for the sanctions order, its only effect was
enhancement of the award of attorney's fees and cost by resolving
doubts in favor of plaintiffs; no other sanction was imposed.  
Therefore, the sanctions order has a current immediate impact on
the Gonzalez defendants but not on Volvo (since the attorney's fee
award as to it must be reversed) nor on Trebol (because no judgment
as to attorney's fees has been entered against Trebol).  
Nevertheless, even as to Volvo and Trebol, the sanctions order is
potentially significant.
    While the sanction remedy chosen by the district court is
no longer viable against Volvo, there is no obvious reason why the
district judge could not now frame a different sanction remedy--
assuming that Volvo has properly been found to have committed
misconduct.  Trebol's prospective liability for attorney's fees
remains once the bankruptcy bar is lifted; thus, the sanction order
also has a foreseeable impact on Trebol if allowed to stand.  Thus,
even if the sanctions order has an immediate impact only upon the
Gonzalez defendants, it also has a significant likely impact upon
Volvo (as the basis for an alternative sanction remedy) and upon
Trebol (because of the impact on Trebol's liability for attorney's
fees).
    Accordingly, we turn to the merits of the sanctions and
attorney's fee orders and conclude at the outset that the sanctions
order is flawed for two separate reasons.  The first reason is that
there has been inadequate notice and opportunity on the part of the
defendants to defend against the sanctions determination; the
second is the automatic attribution of fault to all defendants.  We
address each point in turn.
    Our first concern is that Volvo has been condemned at
least in part for conduct as to which it had no warning that any
defense was required.  As for Trebol and the Gonzalez defendants,
it appears that at no time before the sanctions order was issued
were they or their counsel formally advised that any sanctions
order against them was being sought.  When they objected to the
court on this ground after the order was entered, their motion for
reconsideration was tersely overruled.
    We have previously noted "the general desirability and
sometime necessity of affording notice and an opportunity to be
heard when monetary sanctions are imposed."  Media Duplication
Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1238 (1st Cir.
1991).  The court has laid down no "per se rule," id., because
circumstances are so various:  the nature and complexity of the
misconduct, the severity of the sanction, whether the misbehavior
took place in the presence of the judge, and similar considerations
all play a role.  Id.  And notice and an opportunity to defend do
not necessarily entail an evidentiary hearing.  Id.  But here, as
in Media Duplication itself, "[c]ircumstances . . . indicate that
the procedure followed was inadequate."  Id.
    In particular, the district court made determinations on
a number of serious charges; yet, as to some (in Volvo's case) and
all (the case of the other defendants) there was no prior notice of
the charges.  Further, the judge did not explain which
determinations in granting attorney's fees were affected by the
sanctions remedy; but the amount of attorney's fee award was
substantial and a sanction may have had an important effect.  
Finally, based on prior incidents in the case, where apparent
misconduct turned out to be a misunderstanding, see, e.g., p. 5
above, notice and a full opportunity for explanation would not
necessarily have been without purpose.
    Wholly independent of the lack of notice and opportunity
to defend, the court's sanctions order is flawed because it
attributes misconduct to all codefendants indiscriminately without
adequate supporting findings.  It holds that because the defendants
conducted a joint defense--itself a very elastic notion that could
embrace a number of quite different relationships--each defendant
was therefore automatically responsible for any misconduct in
discovery or other proceedings committed by another defendant.  
The district court relied on this concept in imposing sanctions
against Volvo for misconduct of Trebol and the Gonzalezes, and
against Trebol and the Gonzalezes for Volvo's misconduct.
    There may be instances in which one codefendant is liable
for sanctions for the litigation-related misconduct of another
defendant, but it would take findings as to knowledge and
participation or acquiescence far more specific and detailed than
a simple reference to a joint defense.  Codefendants cooperate all
the time, but that does not mean that one defendant is
automatically responsible for misconduct of another--of which it
may have no knowledge or as to which it may have played no role,
active or passive.  There is not much precedent on this issue but
what there is supports the defendants, and the matter is clear
enough in principal.  See Independent Fire Insurance Co. v. Lea,
979 F.2d 377, 379 (5th Cir. 1992); Lemelson v. Bendix Corp., 104
F.R.D. 13, 18 (D. Del. 1984).
    Both flaws--lack of notice and opportunity to defend and
unsupported attribution of blame--can be obviated by proceedings on
remand.  Volvo and the codefendants now know precisely which
episodes of misconduct are charged against them, and can inform the
district court of their versions of each episode, of the proof they
may wish to offer in an evidentiary hearing or otherwise, and of
any legal arguments against imposing sanctions on defendants.  If
sanctions are proposed against counsel, they too are entitled to
notice and an opportunity to respond.  Whether an evidentiary
hearing may be required is a matter for the district court to
decide in the first instance.
    The attorney's fee award must also be reconsidered.  To
the extent that it rests upon the sanctions order, the flaws in the
sanctions order infect the attorney's fee order as well; we have no
way to isolate fee determinations so affected from others that were
not.  Further, the amount of damages that plaintiffs may collect is
now changed from a certain to an uncertain figure.  So far as the
extent of success may have some bearing on the attorney's fees to
be awarded, the award of attorney's fees might need to await the
re-determination of damages.  See generally 1 Derfner & Wolf, Court
Awarded Attorney Fees para. 8.07 (1997).
    These considerations require that the judgment awarding
attorney's fees be vacated as to the Gonzalez defendants and
remanded for further proceedings.  As to Volvo, the judgment is
reversed outright since no attorney's fees can now be awarded
against Volvo under the RICO statute.  The Trebol defendants remain
potentially liable for attorney's fees but any proceedings to
determine their liability is subject to the lifting of the
bankruptcy bar.  It would be possible to stop at this point but,
since the issue could easily recur on remand, we think it useful to
say something about a remaining legal challenge to the attorney's
fee award pressed by Volvo and the Gonzalez defendants.
    Both Volvo and the Gonzalez defendants' claim that the
district court had no authority to "enhance" an award of RICO
attorney's fees and costs as a sanction for litigation misconduct.  
Sometimes attorney's fees and costs are awarded as a sanction to
offset specific added expenses directly caused by an adversary's
litigation misconduct; but this is not what the district court's
order did.  Rather, the court said that for the entire case, it
would resolve legitimate doubts about attorney's fees and hours in
favor of the plaintiffs.
    In defending this sanction, the plaintiffs point to the
very wide latitude normally allowed to district courts in crafting
sanctions.  See, e.g., Ponlin v. Green, 18 F.3d 979, 984 (1st Cir.
1994); Thibeault v. Square D Co., 960 F.2d 239, 243 (1st Cir.
1992).  The defendants point to the language of the RICO statute
providing for attorney's fees, which (and here we agree with the
district judge) implicitly refers to reasonable attorney's fees and
nothing more.  Our own view is that, while "resolving doubts in
favor of one side" is problematic and fraught with perils when used
as a sanction, the remedy itself is not automatically inconsistent
with RICO; whether a particular award is unreasonable depends on
the facts.
    On remand, this "resolving doubts" remedy--whatever its
legality--is no longer available as a sanction against Volvo: since
it has prevailed on the merits, there will be no RICO award of
attorney's fees and costs against it.  As to the codefendants, the
remedy might be available, assuming misconduct found after a proper
proceeding.  Still, given the uncertain legal status of this
remedy, the district court may want to consider whether it might be
best simply to decide fees and hours on the merits, assuming that
plaintiffs do qualify as the prevailing party, and fashion some
other, more conventional sanction for any misconduct (as the court
in all events must do vis--vis Volvo, should it find sanctions
warranted).
    Nothing we have said in this opinion should be taken to
reflect on the able district judge who presided in this
extraordinarily difficult case.  Without ourselves suggesting
misconduct by parties or counsel, we have seen enough to conclude
that a complex case was rendered even more complicated than
necessary by various gambits on both sides, including not only
discovery tactics but also the proliferation of collateral fraud
charges and the remarkable eve-of-trial default.  A burdened trial
judge is entitled to more cooperation than the district court here
received.   
    The judgment entered April 29, 1997, as amended by the
judgment entered on May 6, 1997, awarding attorney's fees and costs
is reversed as to Volvo and vacated as to the Gonzalez defendants,
and the matter is remanded to the district court for proceedings
consistent with this opinion.
    It is so ordered.

</body>

</html>