# United States Court of Appeals
## For the First Circuit

No. 18-1991

AGLAED GONZÁLEZ-RIVERA,

Plaintiff, Appellant,

v.

CENTRO MÉDICO DEL TURABO, INC., d/b/a Centro Ambulatorio HIMA
San Pablo Caguas, d/b/a HIMA San Pablo Caguas, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

David Efron, Etienne Totti del Toro, and Law Offices of David
Efron, PC, on brief for appellant.
José A. Morales Boscio, Alejandra M. Rivera Ramírez, Bufete
González Villamil, José A. Miranda-Daleccio, Fernando E. Agrait,
Fernando E. Agrait Law Office, Orlando H. Martínez Echevarría, and
Orlando H. Martínez Echevarría Law Office LLC, on joint brief for
appellees.

July 19, 2019

**SELYA**, **Circuit Judge**. Scheduling orders are essential tools for modern-day case management, and litigants flout such orders at their peril. This case, in which plaintiff-appellant Aglaed González-Rivera violated just such a scheduling order and suffered the consequences, illustrates the point. Because the court below acted well within the encincture of its discretion in refusing to countenance the violation, we affirm the entry of judgment in favor of the defendants.

The relevant facts and travel of the case lend themselves to succinct summarization. On March 15, 2010, the plaintiff, a citizen of Connecticut, underwent surgery for complications resulting from a miscarriage at a facility operated by Centro Médico del Turabo, Inc. (the Hospital), located in Caguas, Puerto Rico. Some years later, she invoked diversity jurisdiction, see 28 U.S.C. § 1332(a)(1), and sued the Hospital and several other healthcare providers in the United States District Court for the District of Puerto Rico.[1] The plaintiff claimed that she had sustained serious injuries due to the defendants' negligence. More specifically, she alleged that the defendants, jointly and severally, committed malpractice by, among other things, failing to diagnose her condition in a timely manner, administering spinal

---

[1] The defendants include Omega Anesthesia, PSC; Grupo HIMA San Pablo, Inc.; Dr. Héctor Berríos-Echevarría; Dr. Francisco Golderos-Sanabria; and Dr. Geovannie Marcano-Centeno.

anesthesia carelessly and without her consent, rendering inadequate post-operative care, and discharging her with undiagnosed neurological damage.

After the defendants answered the complaint, the district court entered a scheduling order. See Fed. R. Civ. P. 16(b). Among its other provisions, the scheduling order set a deadline (May 20, 2016) for the disclosure of the plaintiff's expert reports. Building on this foundation, discovery was to close by November 15, 2016, and dispositive motions were to be filed no later than December 16 of that year.

Within the allotted period, the plaintiff disclosed an expert report authored by Dr. Carlos Lasalle-Nieves (Dr. Lasalle). She produced no other expert reports. As the deadline for filing dispositive motions drew near, the plaintiff moved to dismiss without prejudice her claims against Dr. Berríos-Echevarría (her obstetrician), acknowledging that she had no viable cause of action against him. The district court granted her motion.

By December 16, 2016, the defendants had moved both for summary judgment and for exclusion of Dr. Lasalle as an expert witness. In July of 2017 — while the defendants' motions were pending — the plaintiff reversed course and moved to set aside the dismissal of her claims against Dr. Berríos-Echevarría. To justify the proposed reinstatement of these claims, she cited a neurological report by a new expert, Dr. Allan Hausknecht.

Although the plaintiff had identified Dr. Hausknecht as a potential expert witness early in the case, see Fed. R. Civ. P. 26(a)(1), she did not disclose his report to the defendants until June of 2017. That was more than a year after the deadline that the district court had set for the disclosure of the plaintiff's experts' reports. The defendants objected on this basis and moved to exclude Dr. Hausknecht as an expert witness. The district court granted the defendants' motion to exclude Dr. Lasalle and denied the defendants' motion for summary judgment without prejudice so that the parties might explore settlement in light of Dr. Lasalle's exclusion.[2]

When the parties' negotiations proved fruitless, the defendants renewed their consolidated motion for summary judgment. In a thoughtful rescript, the district court rejected the plaintiff's motion to reinstate Dr. Berríos-Echevarría as a

---

[2] For the most part, these rulings are not challenged on appeal. Although the plaintiff's brief makes passing reference to the district court's exclusion of Dr. Lasalle, there is no mention of that exclusion order in her notice of appeal. Thus, we lack jurisdiction to consider that order. See Rojas-Velàquez v. Figueroa-Sancha, 676 F.3d 206, 209 (1st Cir. 2012) (noting that "the jurisdiction of the court of appeals normally is limited to review of orders and judgments specifically described in the notice of appeal"); see also Fed. R. App. P. 3(c)(1)(B). And in any event, any challenge to Dr. Lasalle's exclusion has been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (admonishing that "a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace" (quoting Rivera-Gomez v. De Castro, 843 F.2d 631, 635 (1st Cir. 1988))).

defendant, granted the defendants' motion to exclude Dr. Hausknecht as an expert witness, and — concluding that the plaintiff could not prevail without admissible expert testimony — entered summary judgment in favor of the defendants. This timely appeal followed.

The Civil Rules require parties to disclose the identity of all expert witnesses whom they intend to call at trial. See Fed. R. Civ. P. 26(a)(2)(A). In most cases — the exceptions are not relevant here — an expert witness must produce a written report, which includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). District courts have considerable autonomy in managing discovery proceedings. This authority extends both to setting disclosure deadlines and meting out sanctions when parties fail to honor such deadlines. See Genereux v. Raytheon Co., 754 F.3d 51, 59 (1st Cir. 2014); see also Fed. R. Civ. P. 26(a)(2)(D) (stating that expert disclosures must be made "at the times and in the sequence that the court orders").

We review for abuse of discretion a district court's order excluding an expert witness as a sanction for noncompliance with a scheduling order. See Samaan v. St. Joseph Hosp., 670 F.3d 21, 35 (1st Cir. 2012). "This standard of review obtains both as to the finding that a discovery violation occurred and as to the

- 5 -

appropriateness of the sanction selected." Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este, 456 F.3d 272, 275 (1st Cir. 2006). Review for abuse of discretion is highly deferential. We will find such abuse only "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988). Thus, "[t]he question is not whether we, as an original matter, would have utilized the same sanction, whether some harsher sanction might have been warranted, or whether some less painful sanction might have sufficed; rather, the question is whether the district court, in choosing the particular sanction misused its discretionary powers." Thibeault v. Square D Co., 960 F.2d 239, 243 (1st Cir. 1992).

In this instance, the plaintiff contends that the district court abused its discretion by meting out an excessively severe sanction. She notes that the court excluded her only available expert witness, Dr. Hausknecht, thereby ensuring that she could not prove an essential element of her malpractice claims. When evaluating the appropriateness of a sanction, a reviewing court must take into account the totality of the circumstances. See id. at 246. Where, as here, the sanction for a Rule 26

violation is the exclusion of a proffered expert witness, we "consider a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects." Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003). "Surprise and prejudice are important integers in this calculus," as is "what the late disclosure portends for the court's docket." Id.

The district court adopted this approach. It assayed the totality of the circumstances and found that the lion's share of the pertinent factors favored exclusion. To begin, the court appraised the history of the litigation and discerned a strategic attempt by the plaintiff, bordering on bad faith, to develop a "contingency plan" through which she could salvage her case should Dr. Lasalle's testimony be excluded. Next, the court weighed the plaintiff's stated justification for the lengthy delay in producing Dr. Hausknecht's report — that the disclosure deadline referred exclusively to Dr. Lasalle's report — and found it specious. Having concluded that the delay was manifestly unwarranted, the court went on to find that it would be "wishful thinking" to suggest that the defendants would not be prejudiced by the late disclosure, especially since discovery had long since closed and the defendants had already moved for summary judgment.

Finally, the court explained that allowing the belated disclosure would have a negative effect on its docket.

On the other side of the scale, the district court found slim pickings. Only one factor favored the plaintiff: the need for the precluded evidence. After all, excluding Dr. Hausknecht would leave the plaintiff without any expert testimony and, thus, would "effectively dispose of the case." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 79 (1st Cir. 2009); see Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 190 (1st Cir. 1997) (explaining that "because Puerto Rico law presumes that physicians exercise reasonable care, a plaintiff bent on establishing a breach of a physician's duty of care ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it"). Nevertheless, the other factors preponderated so heavily against excusing a blatant violation of the court's scheduling order that exclusion (the court believed) was a condign sanction.

Although the plaintiff characterizes this ruling as draconian, we think that it draws its essence both from the particulars of the case and from the realities of modern-day litigation. As we have warned, "discovery must not be allowed to degenerate into a game of cat and mouse." Thibeault, 960 F.2d at 244. In choosing to disclose only a single expert report by the court-ordered deadline, the plaintiff elected to gamble her case

- 8 -

on the admissibility of that expert's testimony. She must abide the foreseeable consequences of that lost gamble. When all is said and done, "[a] party who knowingly chooses to put all [her] eggs in one basket is hard-pressed to complain when the basket proves inadequate and the trial court refuses to allow [her] to substitute a new and previously undisclosed basket for it." Samaan, 670 F.3d at 37. This is particularly true when — as in this case — allowing the plaintiff to change course after the defendants have already expended time and resources briefing a motion for summary judgment would be obviously prejudicial. See Amoah v. McKinney, 875 F.3d 60, 63 (1st Cir. 2017) (denying belated attempt to add new experts because granting it would prejudice defendants by requiring them "to withdraw their current motion for summary judgment, depose plaintiff's experts, . . . and then — if still deemed prudent — file a new motion for summary judgment").

If more were needed — and we doubt that it is — we cannot forget that "the district court has an interest in the efficient management of its docket." Santiago-Díaz, 456 F.3d at 277. It follows that "[w]henever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised." Id.

We do not gainsay that the plaintiff had a compelling need for Dr. Hausknecht's testimony. But that circumstance was a by-product of the plaintiff's tactical choices; and in all events,

- 9 -

that circumstance alone cannot carry the day. See id. at 277-78 (affirming exclusion of plaintiff's sole expert when plaintiff's need for expert testimony was only factor weighing in her favor). Judicial decisions about sanctions cannot be made solely from the perspective of one party to the case but, rather, must strike an equitable balance between the rights and responsibilities of all of the affected parties.

That is game, set, and match. Because the district court did not abuse its discretion in excluding Dr. Hausknecht, its grant of summary judgment was unimpugnable. See id. at 278 (explaining that "[h]aving concluded that the district court's preclusion of the plaintiff's expert evidence [in Puerto Rico medical malpractice case] was well within its discretion, it follows, virtually a fortiori, that the lower court did not err in dismissing the action"). Indeed, the plaintiff has made no developed argument that her malpractice claims can succeed without expert testimony. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that issues "unaccompanied by some effort at developed argumentation, are deemed waived").

We need go no further. There is little point in repastinating soil already well-plowed, and this case bears a strong family resemblance to Samaan. In each instance, the district court ably evaluated "the relevant factors and made a sensible (though not inevitable) choice of sanctions." 670 F.3d

at 37.  Accordingly, we hold that the court below did not abuse its discretion in excluding Dr. Hausknecht as an expert witness.

"District judges live in the trenches, where discovery battles are repeatedly fought."  <u>Thibeault</u>, 960 F.2d at 244 (quoting <u>Fashion House, Inc.</u> v. <u>K Mart Corp.</u>, 892 F.2d 1076, 1082 (1st Cir. 1989)).  When a district judge — especially a district judge who has become intimately familiar with a case over the course of several years — appropriately weighs the relevant factors and selects a reasonable sanction for a discovery violation, "[w]e cannot, from the remote vista of an algid appellate record, second-guess that choice."  <u>Samaan</u>, 670 F.3d at 37.


**<u>Affirmed</u>.**