Filed: February 13, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 00-2451
(CA-97-3112-CCB)

_____

Bernadette M. Michelone, etc.,

Plaintiff - Appellant,

versus

Rene Desmarais, M.D.,

Defendant - Appellee.

_____

O R D E R

_____

The court further amends its opinion filed January 8, 2002, and amended January 31, 2002, as follows:

On page 3, first paragraph, line 15 -- the time is corrected to read "1:30 a.m. on July 12, 1995."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 00-2451
(CA-97-3112-CCB)

Bernadette M. Michelone, etc.,

Plaintiff - Appellant,

versus

Rene Desmarais, M.D.,

Defendant - Appellee.

O R D E R

The court amends its opinion filed January 8, 2002, as follows:

On page 3, first paragraph, line 15 -- the date is corrected to read "July 12, 1995."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BERNADETTE M. MICHELONE,
Administratrix of the Estate of
Barry L. Michelone, and
individually and as mother and next
friend of Christopher Michelone,
Scott Michelone and Matthew
Michelone,
     *Plaintiff-Appellant,*

No. 00-2451

     v.

RENE DESMARAIS, M.D.,
     *Defendant-Appellee,*

     and

ATLANTIC GENERAL HOSPITAL;
DONALD LOMBINO, M.D.,
     *Defendants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge;
Susan K. Gauvey, Magistrate Judge.
(CA-97-3112-CCB)

Argued: November 1, 2001

Decided: January 8, 2002

Before WIDENER and MICHAEL, Circuit Judges, and
Frank J. MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Justin Griggs McCarthy, Wynnewood, Pennsylvania, for Appellant. John Gary Billmyre, COWDREY, THOMPSON & KARSTEN, P.A., Easton, Maryland, for Appellee. **ON BRIEF:** Roy B. Cowdrey, Jr., COWDREY, THOMPSON & KARSTEN, P.A., Easton, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Bernadette Michelone (Plaintiff), on behalf of herself, the estate of Barry Michelone, and her three minor children, appeals from the judgment rendered against her in the medical malpractice action she brought against Dr. Rene Desmarais, who treated Mr. Michelone as an emergency room patient right before his death. There was a five-day trial, and the jury returned a verdict for Dr. Desmarais. Plaintiff argues on appeal that the magistrate judge who tried the case erred in denying a motion in limine to exclude an expert medical witness's testimony and that the expert's testimony improperly exceeded what was represented in the pretrial order. Finding no reversible error, we affirm.

### I.

Mr. Michelone, who was 38 years old, developed chest pains and nausea on the afternoon of July 10, 1995, while he was on vacation with his family in Ocean City, Maryland. An ambulance took him to Atlantic General Hospital (the Hospital) in Berlin, Maryland. Mr.

2

Michelone was first treated by Dr. Donald Lombino, an emergency room physician. Dr. Lombino consulted by telephone with Dr. Desmarais, the cardiologist on call that evening. Shortly thereafter, at about 6:45 p.m., Dr. Desmarais arrived at the Hospital where he examined Mr. Michelone and reviewed various test results. Dr. Desmarais then ordered that Mr. Michelone be treated with Streptokinase, a thrombolytic drug which dissolves blood clots that cause heart attacks. Dr. Desmarais also ordered that Mr. Michelone be transferred to the Special Care Unit (SCU). After ordering the transfer, Dr. Desmarais left the Hospital and returned to the Peninsula Regional Medical Center where he was treating another patient. After Mr. Michelone was placed in SCU, he complained to the nurse about severe abdominal pain. The nurse talked by telephone with Dr. Desmarais, who ordered a CT scan. Dr. Desmarais returned to the hospital at 11:00 p.m., and at around 1:30 a.m. on July 12, 1995, the CT scan of Mr. Michelone's abdomen showed that he had a ruptured spleen. Dr. Desmarais then consulted with a surgeon, who promptly removed Mr. Michelone's spleen and returned him to SCU. Mr. Michelone died on July 12, 1995, and his death certificate listed splenetic rupture as the cause of death.

Plaintiff sued Dr. Desmarais, the Hospital, and Dr. Lombino for negligently "fail[ing] to timely consider, diagnose, and treat Mr. Michelone's condition of intra-abdominal bleeding." That negligence, Plaintiff alleges, was the proximate cause of Mr. Michelone's death. As to Dr. Desmarais in particular, Plaintiff alleges that he violated the applicable standard of care by administering Streptokinase, transferring Mr. Michelone to SCU, and then leaving the Hospital. Dr. Lombino and the Hospital were awarded summary judgment. As noted above, the case went to trial against Dr. Desmarais, and the jury returned a defense verdict.

The consideration of Plaintiff's appeal requires an understanding of the procedural history leading up to the magistrate judge's denial of Plaintiff's motion in limine to exclude the expert testimony of Dr. David Meyerson. Dr. Meyerson was originally Dr. Lombino's expert, and on March 4, 1999, Dr. Lombino's counsel provided Plaintiff with a Fed. R. Civ. P. 26(a)(2)(B) report setting forth the proposed testimony that Dr. Meyerson would offer on behalf of Dr. Lombino. During Plaintiff's March 26, 1999, deposition of Dr. Lombino, Dr.

Desmarais's counsel, over the objection of Plaintiff's counsel, asked Dr. Meyerson for his opinion about the care and treatment rendered by Dr. Desmarais. Dr. Meyerson replied that he believed Dr. Desmarais's care and treatment of Mr. Michelone met the applicable standard. Plaintiff's counsel then cross-examined Dr. Meyerson with respect to his opinion about Dr. Desmarais. Because Dr. Meyerson offered testimony that was favorable to Dr. Desmarais, Dr. Desmarais's counsel filed on March 30, 1999 (one day before the discovery deadline passed) a "Supplemental Expert Witness Disclosure" designating Dr. Meyerson as an expert witness for Dr. Desmarais and adopting Dr. Meyerson's deposition testimony and the expert report he had provided while serving as Dr. Lombino's expert. Two months later, on May 28, 1999, Plaintiff filed a motion to preclude the testimony of Dr. Meyerson as an expert for Dr. Desmarais. The motion asserted that Dr. Meyerson's written report had not expressed an opinion about the care and treatment rendered by Dr. Desmarais. In his brief in response, Dr. Desmarais said that he had offered to submit Dr. Meyerson to another deposition and to pay for the cost of Dr. Meyerson's time. Plaintiff's motion was denied by the district judge without comment. In the meantime, the trial was set for October 10, 2000, before a magistrate judge by consent of the parties. A few weeks before trial, in September 2000, Plaintiff again sought to preclude Dr. Meyerson's testimony by filing a motion in limine. Dr. Desmarais filed his response to the motion in limine on September 25, 2000, fifteen days before trial. Attached was a Rule 26(a)(2)(B) report setting forth Dr. Meyerson's proposed expert testimony on behalf of Dr. Desmarais. The magistrate judge denied the motion in limine on the ground that "plaintiffs were offered the opportunity to further depose Dr. Meyerson and that that opportunity was afforded sufficiently in advance of trial to avoid prejudice to plaintiffs."

## II.

Plaintiff argues that the magistrate judge erred in denying her motion in limine to preclude the testimony of Dr. Meyerson because Dr. Desmarais violated Rule 26(a)(2)(C) by providing Dr. Meyerson's expert report far too late. Although Dr. Desmarais's late filing of the report violated Fed. R. Civ. P. 26(a)(2)(C), the magistrate judge did not abuse her discretion in allowing Dr. Meyerson's expert testimony.

4

Specifically, the magistrate judge was within bounds in concluding that Plaintiff was not prejudiced.

Rule 26(a)(2)(A) requires disclosure of the identity of any expert witness, and Rule 26(a)(2)(B) requires the expert to prepare a report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor." Rule 26(a)(2)(C) requires the report to be disclosed at least 90 days before trial or within 30 days after the opposing party has made its disclosures. Dr. Desmarais designated Dr. Meyerson as an expert in March 1999 by filing a supplemental expert disclosure statement that adopted Dr. Meyerson's deposition testimony and his earlier report for Dr. Lombino. Still, Dr. Desmarais did not provide Plaintiff with Dr. Meyerson's formal Rule 26(a)(2)(B) report on Dr. Desmarais's behalf until September 25, 2000, fifteen days before trial. This was also long after Plaintiff had provided her Rule 26(a) disclosures in 1998.

According to Rule 37(c)(1), "a party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed." Rule 37(c)(1) thus does not require witness preclusion for untimely disclosure if there is a substantial justification or if missing the deadline is harmless. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3rd Cir. 1995); 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2289.1 (2d ed. 1994) ("The sweep of this exclusion is softened by the proviso that it should not apply if the offending party's failure to disclose was `substantially justified,' and that even if the failure was not substantially justified the exclusion should not apply if the failure was `harmless.'"). A trial judge has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless. *See Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996).

Dr. Desmarais offers no justification, substantial or otherwise, for his failure to provide Plaintiff with a timely Rule 26(a)(3)(B) report in appropriate form from Dr. Meyerson. The question, then, is whether the magistrate judge erred in concluding that the late filing did not prejudice Plaintiff. Plaintiff contends that the magistrate judge erred in finding that she had ample opportunity to depose Dr. Meyer-

5

son about Dr. Desmarais. Plaintiff cites Fed. R. Civ. P. 26(b)(4)(A), which provides: "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided." Plaintiff therefore argues that she could not depose Dr. Meyerson as Dr. Desmarais's expert until after she received the report on September 25, 2000.

The magistrate judge did not abuse her discretion in finding that the late filing violation of Rule 26(a)(2)(C) was, in the end, harmless. The rule's report requirement is meant in part to prevent prejudice created by last minute surprises. As a result, "[t]he focus of a preclusion inquiry is mainly upon surprise and prejudice." *Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992). *See also Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) ("The purpose of a `detailed and complete' expert report as contemplated by Rule 26(a) . . . [is to] prevent an ambush at trial."). Thus, whether a late disclosure is prejudicial depends on whether the expert testimony was unexpected and left the other party without adequate opportunity to prepare for it.

Plaintiff knew the thrust of Dr. Meyerson's proposed testimony on behalf of Dr. Desmarais well before the September 25, 2000, expert report was filed. In a March 30, 1999, "Supplemental Expert Witness Disclosure" Dr. Desmarais had adopted and incorporated (1) Dr. Meyerson's report prepared on behalf of Dr. Lombino and (2) Dr. Meyerson's March 26, 1999, deposition testimony. These documents contained substantially the same information as did the Rule 26(a)(3)(B) report, when it was finally filed.

The late report explained that Dr. Meyerson's testimony on Dr. Desmarais' behalf would conclude generally "that defendants Desmarais and Atlantic General Hospital operated within the standards of care for the medical community in question in the treatment of Mr. Barry Michelone." The report said that Dr. Meyerson would testify specifically (1) that Dr. Desmarais's administration of Streptokinase and his transfer of Mr. Michelone to SCU were within the accepted standard of care in the community and (2) that Dr. Desmarais's failure

6

to diagnose the spleen problem did not violate the standard. Earlier, in his report as Dr. Lombino's expert, Dr. Meyerson had concluded: "I see nothing that should reasonably have led Dr. Lombino *or other emergency personnel* to consider splenetic rupture as a potential diagnosis in this patient. Further . . . it was appropriate to transfer the patient to a higher level of specialty care (The Special Care Unit)." (Emphasis added.) In his deposition as Dr. Lombino's expert, Dr. Meyerson had said that he also believed that Dr. Desmarais had acted within an applicable standard of care, and Dr. Meyerson explained the basis for this opinion. Thus, the late report did not contain any surprising new disclosures.

In addition, Plaintiff had the opportunity to depose Dr. Meyerson about Dr. Desmarais. Dr. Meyerson first expressed an opinion about Dr. Desmarais during his deposition as Dr. Lombino's expert, and Plaintiff's counsel cross-examined him about Dr. Desmarais at that time. Dr. Desmarais offered Plaintiff the opportunity to depose Dr. Meyerson further in July 1999, after he was designated as Dr. Desmarais's witness. Plaintiff declined this opportunity. In any event, any additional questions Plaintiff had of Dr. Meyerson could have been asked during the two weeks before trial, after the proper report was filed. While this time frame was not ideal, taking a supplemental deposition was within the bounds of what was achievable.

Plaintiff knew well in advance of trial that Dr. Meyerson would be offered as an expert for Dr. Desmarais, and she also knew why Dr. Meyerson believed that Dr. Desmarais had acted within the accepted standard of care. Before Dr. Meyerson was designated as Dr. Desmarais's expert, Plaintiff took the opportunity to question him about why he believed that Dr. Desmarais had acted within the standard. Plaintiff declined the opportunity to depose Dr. Meyerson further after he was designated in Dr. Desmarais's supplemental disclosure on March 30, 1999. Finally, Plaintiff did not attempt to depose Dr. Meyerson after she received his formal report on September 25, 2000, even though she must have known that it was likely that Dr. Desmarais would be allowed to testify. After all, the district judge had denied her earlier motion to preclude his testimony. In sum, the magistrate judge did not abuse her discretion in finding that Plaintiff was not prejudiced by the late filing of Dr. Meyerson's report.

7

## III.

Plaintiff also argues that she was prejudiced because Dr. Meyerson's testimony went beyond what was represented in the pretrial order. At trial Dr. Meyerson testified in direct examination that Dr. Desmarais satisfied the standard of care for cardiologists and that "in evaluating a case like this, you have to go from the beginning to the end, not from the end to the beginning." Plaintiff claims she was prejudiced by this "global" testimony. She argues that the pretrial order represented that Dr. Meyerson would testify only that Dr. Desmarais's treatment of Mr. Michelone with Streptokinase and his transfer of Mr. Michelone to SCU were within the standard of care. The global testimony, Plaintiff asserts, also encompassed Dr. Desmarais's decision to leave the hospital after transferring the patient to SCU.

Plaintiff did not preserve any argument about the scope of Dr. Meyerson's testimony. Appellate review of the admissibility of evidence is waived unless there is a timely objection or motion to strike during trial. *See* Fed. R. Evid. 103(a); *DiPaola v. Riddle*, 581 F.2d 1111, 1113 (4th Cir. 1978). Plaintiff did not object when defense counsel asked the global question, "[D]o you have an opinion to a reasonable degree of medical certainty as to whether Dr. Desmarais' care satisfied the standard of care for cardiologists?" Nor did she move to strike either the global answer, "yes," or the basis for that answer, which included the statement quoted in the preceding paragraph.

We may consider an issue raised for the first time on appeal if the standard for noticing plain error is satisfied. *In re Celotex Corp.*, 124 F.3d 619, 630-31 (4th Cir. 1997) (holding that "the requirements of [*United States v. Olano*, 507 U.S. 725 (1993)] must be satisfied before we may exercise our discretion to correct an error not raised below in a civil case," and reciting that the *Olano* test is satisfied "if: (1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines, after examining the particulars of each case, that the error seriously affects the fairness, integrity or public reputation of judicial proceedings."). The standard is not met here because there was no plain error or prejudice. First, Dr. Meyerson's testimony could not have been wholly unexpected because he made a general (or global) statement in his report: "[D]efendant Desmarais . . . operated within the standards of care for

8

the medical community in question." Second, although Dr. Meyerson's report (and the statement of his expected testimony in the pretrial order) focused on the administration of Streptokinase to Mr. Michelone and his transfer to SCU, so did defense counsel's direct examination of Dr. Meyerson. Third, the only time Dr. Meyerson actually commented about Dr. Desmarais's leaving the Hospital was when Dr. Meyerson was asked about it on cross-examination by Plaintiff's counsel. Plaintiff's counsel asked Dr. Meyerson whether his testimony (that is, his global answer) was meant to include an opinion about the propriety of Dr. Desmarais's leaving the Hospital. Dr. Meyerson's answer was actually equivocal: "If he [Dr. Desmarais] left the hospital to go have dinner with his family or have a beer or something of that nature, I would say that is totally not within the standard of care. If however, he was juggling his time between two acutely-ill people and he left the nurses instructions on how to contact him and he was in touch by a cell phone or beeper or whatnot, then that does not in my judgment depart from the standard of care." In short, these circumstances convince us that Dr. Meyerson's general answer that Dr. Desmarais acted within the standard of care was not admitted in plain error; and, in any event, Plaintiff's substantial rights were not affected by the admission of the answer.

The judgment is affirmed.

*AFFIRMED*

9