<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0550n.06

Case No. 18-4168

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SHELLEY MATHIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| DUANE M. MATHIS, Administrator of the Estate of Shelley Mathis, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | **OPINION** |
| R. ARTURO ROA, M.D., et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

FILED
Oct 30, 2019
DEBORAH S. HUNT, Clerk

BEFORE: SILER, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge.  Reversal rates show that appellants in federal court face an uphill battle, which, more than anything, reflects the high quality of our district court colleagues. Appellants who challenge decisions that lie within the discretion of those judges face an even steeper challenge.  And appellants who fail to make timely objections, fail to follow scheduling orders, and fail to make a proper record on appeal face a nearly impossible task—and so it is here. Appellants in this medical malpractice case challenge the district court's decision to exclude their late proffered rebuttal expert.  Because the district court acted within its discretion, we AFFIRM.

I.

Dr. Arturo Roa performed exploratory sinus surgery on decedent Shelley Mathis in December 2012 after a CT scan revealed a suspicious, 8-millimeter mass in Shelley's right frontal sinus.  The mass turned out to be an encephalocele—a hernia of brain tissue that drops into the

sinuses—so Roa did not remove it. Shelley began to experience seizures after the surgery and later underwent two more surgeries to remove the encephalocele and close the opening in her skull through which the encephalocele herniated.

In December 2014, Shelley filed a medical malpractice suit against Roa and Roa's employer, Holzer Clinic, LLC. Shelley alleged that Roa punctured her encephalocele during the December 2012 sinus surgery, which caused a leak of central spinal fluid that triggered her seizure disorder. After filing her suit, Shelley continued to receive treatment for her seizure disorder until her death in March 2016. Her executor and ex-husband, Duane Mathis, filed an amended complaint and added a claim for wrongful death.

Roa filed an answer, denying that the surgery caused Shelley's seizure disorder, so the case went to discovery. The district court set several discovery deadlines, including that Roa disclose his experts by March 1, 2017, that Plaintiffs disclose their rebuttal experts by April 15, 2017, and that all discovery end by June 30, 2017. Plaintiffs, however, never identified a rebuttal expert, nor did they depose Roa before discovery ended.

About a year after the discovery cutoff, the court scheduled trial for October 2018. And two months before trial, Plaintiffs decided that they wanted to depose Roa. So they moved to compel Roa's deposition, which the magistrate judge granted. At that deposition, Plaintiffs brought with them a pathologist they had retained, Dr. Gerald Penn, to listen in. Roa allegedly[1] stated that it was impossible to reach Shelley's encephalocele when he performed the sinus surgery, meaning that he could not have damaged any tissue or caused any leak of central spinal fluid.

---

[1] Roa's deposition is not in the record, leaving us with Plaintiffs' summary of that deposition. Roa did not dispute that summary in his brief to this court.

According to Plaintiffs, that deposition helped them build a new theory of Roa's liability. Plaintiffs obtained pathology slides containing tissue that Roa removed during the December 2012 surgery and asked Penn to examine those slides. As Plaintiffs explain, the original pathologist did not stain the slides with the proper chemical used to detect glial cells—cells of the tissue from the central nervous system—so Penn re-cut the slides and applied the proper chemical. The re-cut slides revealed glial cells, which Plaintiffs say proves that Roa pierced Shelley's encephalocele.

At trial, Plaintiffs did not call Penn to testify during their case-in-chief, and Penn's name does not appear on their witness list. Rather, Plaintiffs called several physicians who treated Shelley, along with an expert witness—an ear-nose-and-throat doctor—who testified to Roa's performance and the proper standard of care. During his case-in-chief, Roa presented testimony from his expert, Dr. Subinoy Das, another ear-nose-and-throat doctor. Das testified that Shelley suffered from idiopathic intracranial hypertension ("IIH"), a rare disease that causes high pressure in the skull. Over time, the pressure can cause pieces of skull to dissolve, and parts of the brain can herniate through the holes where the bone once was, creating an encephalocele. Das further testified that IIH can cause seizures and death. As to Roa's performance, Das testified that it was impossible for Roa to have reached—or breached—the encephalocele when Roa operated on Shelley. On cross-examination, Plaintiffs' counsel asked Das whether his opinion would change if he learned that the pathology slides contained glial cells. Das said that it would, agreeing that those cells would suggest that Roa had breached the encephalocele during the surgery.

After Das finished testifying, Plaintiffs asked the court to call Penn as an expert witness to testify about the glial cells on the re-cut pathology slides and thus rebut Das's testimony. Roa moved to strike that testimony, explaining that Plaintiffs did not turn over Penn's expert report until the night beforehand. Roa also argued that because Das issued his expert report in 2016—in

which he discussed the pathology report—Plaintiffs had ample opportunity to procure an expert witness to rebut Das's opinions and conclusions.

The district court granted Roa's motion to strike Penn's testimony. And the jury ultimately ruled for Roa on both the medical malpractice and wrongful death claims. Plaintiffs appeal the district court's decision to block Penn's testimony.

## II.

Plaintiffs' sole challenge here is to the district court's rejection of their proffered rebuttal expert, Dr. Penn. We review that decision for an abuse of discretion. *See Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987). And because this case is about expert testimony, we turn to Federal Rule of Civil Procedure 26 first. Under Rule 26, an expert witness who will testify at trial must submit an expert report setting forth the opinions he is offering and the bases for those opinions. Fed. R. Civ. P. 26(a)(2)(B). Expert testimony at trial that exceeds the scope of that report or sets forth a new theory of the case is subject to exclusion under Rule 37. Fed. R. Civ. P. 37(c)(1); *see, e.g.*, *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1285–87 (Fed. Cir. 2011). And that seems to be what Plaintiffs claim here: that Dr. Das, Roa's expert, offered a new, undisclosed theory at trial—namely, pinning the source of Shelley's fatal seizure disorder and brain impairment on IIH and not on Roa. Because of that new theory, Plaintiffs claim they had a right to present rebuttal expert testimony.

But Plaintiffs' argument fails for several reasons. First, Plaintiffs failed to object when Das offered his supposedly new, previously undisclosed theory of the case. As a threshold matter, to seek relief when an expert witness testifies outside the scope of his report, the opposing party's first line of defense is to object and present the district court with a chance to exclude the testimony from the jury. *See* Fed. R. Evid. 103(a)(1)(A) (noting requirement of timely objection); *Taylor v.*

4

*GEICO Indem. Co.*, 663 F. App'x 740, 745 (11th Cir. 2016); *Michelone v. Desmarais*, 25 F. App'x 155, 160 (4th Cir. 2002). Perhaps a party would prefer the chance to introduce rebuttal testimony, rather than simply exclude testimony beyond the scope of the expert's report. (We decline to speculate.) That said, a party that claims to be surprised by an expert's testimony should alert the district court when the expert testifies (or even before, if a party has reasonable suspicions before trial)—not when it requests to call a previously undisclosed rebuttal expert to the stand.

Even putting aside Plaintiffs' problematic failure to object to Das's testimony, their claim fails on the merits. To be sure, a party may call a previously undisclosed rebuttal expert after the opposing party's expert has testified—but only under limited circumstances. *See, e.g.*, *Benedict*, 822 F.2d at 1428–29. In *Benedict*, for example, we held that the rebuttal testimony was permissible because the defendant's expert witness presented new evidence and a previously undisclosed theory during the defendant's case-in-chief. *Id.* Because the expert "introduc[ed] contradictory data and methodology," we said that the plaintiffs "had a right to counteract the opposing expert's testimony by putting on their own expert." *Id.* at 1429. So when an expert witness advances an opinion or theory that differs from what he said in his report, the opposing party may respond through rebuttal expert testimony of its own.

On appeal, Plaintiffs argue they had a right to present rebuttal expert testimony because Das never disclosed his theory that Shelley suffered from IIH or that Roa could not have punctured Shelley's encephalocele. But beyond a conclusory allegation in their brief to this court, Plaintiffs have identified no inconsistency between what Das wrote in his expert report—which he disclosed sometime before March 2016—and what Das testified to at trial. (And by the way, nothing in the record suggests that Plaintiffs ever deposed Das.) Plaintiffs apparently failed to even put Das's expert report in the record so that we could examine it. That failure seems odd given that the core

of Plaintiffs' claim is that Das offered a new, undisclosed theory at trial—and that the district court abused its discretion by not allowing Plaintiffs to introduce rebuttal testimony.[2]

We are left to examine what Roa purports to quote from Das's report. We have no reason to doubt the veracity of those quotes, which appear in Roa's brief to this court, because Plaintiffs did not file a reply brief in our court or a motion challenging those representations. Looking at those quotes, it seems obvious that Das disclosed his IIH theory and his reliance on the pathology report's conclusions. In fact, Plaintiffs had some inkling that the pathology report and the post-operative testing of the pathology specimens could be relevant. Plaintiffs' proffered expert, Penn, was present when Plaintiffs deposed Roa, after which Penn allegedly tested those specimens himself.[3] But Plaintiffs apparently made no attempt to add Penn to their witness list before trial, much less produce an expert report before trial began.

Although we do not have Das's expert report before us, the trial transcript reveals that the district court scrutinized that report before granting Roa's motion to strike Penn's testimony. Reading directly from Das's report, the court noted that Das mentioned the pathology report from

_____

[2] This case seems unusual in this era of litigation in that there appear to have been no dispositive motions, no *Daubert* motions, and no post-trial motions—when one might have expected an expert report to be placed in the record. Although the district court relied on Das's report when it declined to allow Plaintiffs' rebuttal expert to testify, our review is limited to "the original papers and exhibits filed in the district court," along with transcripts and a certified copy of the docket entries. Fed. R. App. P. 10(a)(1), (a)(2)–(3). Because Plaintiffs never filed the report with the district court, it falls outside the appellate record. Of course, Plaintiffs could have filed a motion with this court to expand the record to include Das's report. *See* Fed. R. App. P. 10(e)(2). But Plaintiffs have made no such motion, "so the materials in question are simply not in the record for purposes of this appeal." *Berger v. Medina Cty. Ohio Bd. of Cty. Comm'rs*, 295 F. App'x 42, 46 (6th Cir. 2008).

[3] Inexplicably, Plaintiffs failed to take Roa's deposition until one month before trial—despite having nearly four years to do so. Plaintiffs contend that this was because of Roa's "stubborn intransigence" but fail to point to any place in the record that suggests they tried to depose Roa before the discovery cutoff. (Appellants' Br. at 14.) Defendants' unrebutted representation is that Plaintiffs did not request to take Roa's deposition until two months before trial.

Shelley's first surgery. That is significant for two reasons. First, it counters Plaintiffs' claim that Das testified about a new theory that he failed to disclose in his expert report, which could have warranted rebuttal testimony. With no inconsistency between Das's expert report and Das's testimony, however, there is no justification for Penn's eleventh-hour testimony. Second, Plaintiffs had ample opportunity to rebut Das's testimony once they learned that Das based his opinion—in part—on the pathology report. Indeed, the court noted that because Das released his report sometime before March 2016, Plaintiffs could have tried to locate an expert—like Penn— to rebut Das's testimony. The court even remarked that if Plaintiffs had requested to introduce rebuttal testimony one month before trial, it would have "permit[ted] a deposition [or permitted] either side to produce another expert." (R. 86, Tr. at PageID #583, 66:14–16.) But Plaintiffs' late request amounted to "blindsiding" that the district court—rightfully—would not permit, explaining that "the whole premise of the discovery rules [is] to make sure neither party gets surprised." (*Id.* at PageID #583, 66:17; PageID #577, 60:4–6.) *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (affirming exclusion of rebuttal expert proffered a month before trial).

III.

Given the district court's thorough consideration and the state of the record as we find it, we conclude that the district court did not abuse its discretion. We AFFIRM.