# United States Court of Appeals
## For the First Circuit

No. 00-1278

JOSE ANTONIO ORTIZ-LOPEZ, ET AL.,

Plaintiffs, Appellants,

v.

SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y
BENEFICIENCIA DE PUERTO RICO, ETC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Chief Judge,

Campbell, Senior Circuit Judge,

and Selya, Circuit Judge.

John Ward-Llambías with whom Ricardo Ruiz-Diaz and Ward &
Ward were on brief for appellants.
Jeannette M. López-de-Victoria for appellee.

May 3, 2001

**CAMPBELL, <u>Senior Circuit Judge</u>.** Plaintiffs sued Sociedad Española de Auxilio Mutuo Y Beneficencia de Puerto Rico (hereinafter the "hospital") in the district court under, <u>inter alia</u>, the Emergency Medical Treatment and Active Labor Act (EMTALA), the "anti-dumping statute."[1] EMTALA requires the hospital to "appropriately screen" and "stabilize" the patient before transferring her to another facility. <u>See</u> 42 U.S.C.A. § 1395dd(a) and (b). Plaintiffs are the family of deceased Rosa Rivera, who died after succumbing to an allegedly self-inflicted overdose of painkillers after arriving at the emergency room of the hospital. Plaintiffs allege in their complaint that the way Rivera was treated by defendant's staff fell short of EMTALA's requirements.

Plaintiffs, however, never reached trial on their EMTALA claim. On the day scheduled for trial, the court found that plaintiffs had committed serious discovery abuses by withholding information they were required to furnish, including

---

[1] Initially, in addition to the EMTALA claim, plaintiffs alleged malpractice claims against fictitious co-defendants under the district court's supplemental jurisdiction. Those claims and defendants were voluntarily dismissed from the action on June 7, 1999.

information relative to their proposed expert witness. As a sanction, the court ruled that plaintiffs' expert witness would not be allowed to testify. Thereafter, it granted defendant's motion to dismiss[2], concluding that plaintiffs could not prove their EMTALA claim without the excluded evidence. This appeal followed.

In the course of the year preceding the scheduled trial, the defendant filed three motions to compel under Rule 37(a) and (b).[3] The district court acted on these motions immediately prior to the time the jury trial was scheduled to begin, January 24, 2000. Defendant's allegations in those motions to compel were two-fold.

First, defendant alleged (and the district court later found) that for nearly three years plaintiffs had failed to fully and truthfully answer interrogatories concerning the deceased's medical history as repeatedly requested by the defendant and as required by the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 26(e) (subsection of rule

_____

[2] Defendant's motion, filed December 13, 1999, was entitled "Motion To Dismiss For Lack Of Subject Matter Jurisdiction and/or For Failure To State A Claim For Which Relief Can Be Granted." For purposes of brevity here, we entitle it simply Motion to Dismiss.

[3] The three motions to compel were filed on June 16, 1999, July 29, 1999 and January 18, 2000. The action itself was filed on November 8, 1996 and discovery began on May 16, 1997.

requiring the supplementation of automatic discovery, such as interrogatory answers, when the disclosing party learns "that in some material respect the information disclosed is incomplete or incorrect"). When asked at which hospitals and when and by whom the deceased had been treated in the past, plaintiffs answered by naming only three hospitals but without providing any further information. They claimed not to have any more specific information. When defendant again requested information about Rosa Rivera's prior medical treatment, asking specifically for medical documents and information, such as names of treating physicians and the dates of such treatment (to which plaintiffs had exclusive access), the plaintiffs did not respond.[4] As it turns out, the deceased had been hospitalized for five months in 1991 (for what seems to have been a combination of mental health problems and cervical cancer) and was afterwards in and out of hospitals for cancer treatment. Not until the day of trial, during settlement negotiations, did the defendant learn of this

---

[4] Although defendant managed to get permission from plaintiffs to request hospital records of the deceased through court order, a required procedure under Puerto Rico law, see Puerto Rico Law 101 of July 1965, §3-202, the very general information plaintiffs provided defendant in order to fulfill those requests was inadequate. The hospitals to whom defendant submitted the requests for information about Rosa Rivera were unable to find many relevant records based on the information provided.

from the plaintiffs, although defendant had requested information of this type all along.

During the hearing on the motions to compel, the district court determined that plaintiffs' withholding of this information was in bad faith. "They [the plaintiffs] know when their sister, . . . his wife was hospitalized and they have kept you [their counsel] in the dark as to all of this because certainly five months hospitalization, it certainly is of such magnitude that a husband or a sister or mother would know and would have told you . . . [in the course of] answering interrogatories . . . . I am not implying that you [plaintiffs' counsel] are at fault. It is your client. They have tried to keep defendants in the dark as to your client's problems . . . ."

While the court found purposeful evasion in failing to reveal Rosa Rivera's medical history, supra, this was not the finding that led directly to the dismissal of plaintiffs' case. Defendant's second allegation contained in their last two motions to compel was the basis for the exclusionary ruling that ultimately ended the case. Defendant complained that plaintiffs had failed to comply with the automatic expert disclosure requirements of Rule 26(a)(2)(B), to wit, providing the names of court cases in which their designated expert had previously

testified. Defendant successfully argued that this omission should cost plaintiffs the use of their expert without whom they would be unable to make out a case.

Plaintiffs' response to this allegation, in writing and at argument before the district court, was that it had been impossible to produce the required information because their expert did not "keep his records" that way (allegedly the plaintiffs' expert did not keep a list of all the cases in which he testified and only remembered the attorneys' names). Plaintiffs further responded that they had fulfilled Rule 26(a)(2)'s requirement by providing to the defendant the names of some of the attorneys with whom the expert had previously worked.

After hearing arguments on all outstanding motions to compel and, after recessing for a time in which the parties could negotiate further and the court could conduct some independent research into the motions pending, the court thereupon granted defendant's motion to exclude plaintiffs' expert witness. Plaintiffs protested that they would have no way to admit relevant documents other than through their expert witness. The court noted that that being the case, plaintiffs might not be able to make out their EMTALA claim. The court informed both parties they had the afternoon and evening to

discuss the matter and recessed until the following morning when the jury would be brought in for opening arguments.

The next day, January 25, 2000, in an attempt to get the court to reverse its previous ruling excluding their expert witness, plaintiffs' counsel produced to defendant and the court -- contrary to their earlier arguments that such information was unavailable -- a list of all the court cases in which their expert witness had previously testified. Calling plaintiffs' belated proffer both "an insult" and "a shame", the district court refused plaintiffs' list and then invited both parties to present arguments as to why the case should or should not be dismissed for failure to state a claim or, in the alternative, for lack of subject matter jurisdiction, the plaintiffs having lost their chance to present evidence as to their one remaining claim. Thereupon defendant renarrated the lengthy story of its frustrating attempts to obtain discovery. At the conclusion of defendant's story, to which plaintiffs had little relevant to add, the district court announced its dismissal of the plaintiffs' case with prejudice.

Plaintiffs say little in their appellate briefs and argument by way of justifying their failure to have provided the above-described discovery. Instead, plaintiffs contend that the district court misapplied the law of this circuit when it

excluded the expert evidence as a discovery sanction without first having made a finding that plaintiffs were in violation of a court order to compel.  Plaintiffs point to Rule 37(b)(2), which provides:

> (b) Failure to Comply With Order
>
> If a party or an officer, director, or managing agent of a party . . . <u>fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule</u> . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Fed. R. Civ. P. 37(b)(2) (emphasis added). Plaintiffs cite case law from this circuit holding that "[Rule 37]'s language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery:  a court order must be

in effect, and then must be violated, before the enumerated sanctions can be imposed." <u>R.W. International Co.</u> v. <u>Welch Foods, Inc.</u>, 937 F.2d 11, 15 (1st Cir. 1991).

Plaintiffs' argument fails because the district court did not act here under Rule 37(b)(2)(B), the provision at issue in <u>Welch Foods</u>. Rule 37(b)(2)(B) does indeed contemplate a threshold determination by the court that the offending party has failed to comply with a court order issued under Rule 37(a). But the same is not true where automatic discovery provisions of Rule 26(a) and 26(e) are violated, triggering subsection (c) of the same Rule 37. <u>See</u> Fed. R. Civ. P. 37(c). Subsection (c) of Rule 37 provides, in relevant part, that should a court find that

> a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [, that party] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1). Under part (c), therefore, a court order issued under part (a) need not first be violated before the court may impose the sanctions provided under (c). What the district court must find under Rule 37(c) is that the offending parties were not "substantially justified" in failing to disclose information required by Rule 26(a) or Rule 26(e) and that the failure to disclose was not harmless. This is a "self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision [37](a)(2)(A)." Fed. R. Civ. P. 37, advisory committee notes.

It is true that when defendant requested sanctions here, it referred to Rule 37(a) and (b) rather than to Rule 37(c). However, the record of the proceedings indicates that the court, in refusing to allow plaintiffs to call their expert, expressly invoked Rule 37(c) and not 37(b). On the first hearing on this issue (the first day of trial), the district court cited to and quoted the text of Rule 37(c)(1). "This is what I [am] going to do. I [am] going to read from the Federal Rules of Civil Procedure, 37(c)(1) which [is] the one that provides for the sanctions in the event that the party fails to make the required disclosure . . . [under] Rule 26(a)[,] which this one is (a)(2)(B) . . . ." The district court referred explicitly to the so-called "self-executing" provision of Rule

-10-

37(c)(1) and to the mandatory disclosure requirements for expert witnesses. The court then made the explicit finding that plaintiffs' discovery abuse was not substantially justified and was not harmless.

> From what I have heard, it is not harmless. I mean, you were requested, you were notified since June of last year, notified that the [expert] report was deficient, that it did not comply with the rules. . . . Now, there has been no explanation brought to the court of why this expert is unable or unwilling to provide a report which complies with the rules. . . . The selection [or] retention of an expert witness is within the control of the party employing the expert. That is[,] to the exten[t] that there is a disadvantage created by the expert's failure to disclos[e , it] must be born by the party retaining the expert witness.

We accordingly find no merit in plaintiffs' argument that the court could not impose sanctions as it was not enforcing a Rule 37(a) order. The only question is whether the sanctions it imposed were within its authority and discretion under Rule 37(c)(1). We hold they were.

Under Rule 37(c), the district court's latitude is wide. See Poulin v. Greer, 18 F.3d 979, 984 (1st Cir. 1994). For failure to make the specified discovery, the district court is directed to preclude as evidence "any witness or information not so disclosed," and "[i]n addition to or in lieu of this sanction, the court, on a motion and after affording an

opportunity to be heard, may impose other appropriate sanctions . . . [which] may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." Fed. R. Civ. P. 37(c). These latter provisions specifically provide for "prohibiting that party from introducing designated matters into evidence" (subparagraph (b)(2)(B)) and for "dismissing the action" (subparagraph (b)(2)(C)). The range of sanctions provided in Rule 37(c), from the most harsh (total exclusion and dismissal of the case) to more moderate (limited exclusion and attorney's fees), gives the district court leeway to best match the degree of non-compliance with the purpose of Rule 26's mandatory disclosure requirements. See Klonski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) ("[T]he new rule [37(c)] clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.")

In this case, over the course of six months, defendant repeatedly warned the plaintiffs – through correspondence and motions to the court – that plaintiffs' expert disclosures were deficient. In particular, defendant asked for the list of what plaintiffs claims were "forty or more" cases in which their expert had previously testified. Defendant explained, and the

district court credited the explanation, that without the information about the cases in which plaintiffs' expert has previously testified, defendant was prevented from deposing him as to his prior experience in EMTALA cases, which he claimed was extensive and on which he was going to buttress his own opinion in this case. Also, as plaintiffs planned exclusively to rely on their expert to support their claim of an EMTALA violation, the expert's credibility and persuasiveness, supported by his qualifications and his experience, would be directly at issue. It was, therefore, reasonable for the district court to find that plaintiffs' failure to provide defendant with this information prejudiced defendant's case.[5]

Here, plaintiffs' deficient expert report flies in the face of the purpose of the mandatory expert disclosure requirements delineated in Rule 26(a)(2), which Rule 37(c) is intended to uphold and facilitate. See Fed. R. Civ. P. 26

---

[5] As the court noted, plaintiffs' proffer of the requested information on the day after the trial was to begin, and after the court had already ruled against the plaintiffs on this issue, showed that the plaintiffs misled both the party and the court when they said they were unable to procure the requested information. The belated proffer also was insufficient to cure the harm caused to the defendant as the trial had already begun; the district court, having delayed the trial date twice already at the plaintiffs' request, was not going to delay it any further; and therefore, the defendant was short of time, due to no fault of its own, to properly prepare cross-examination and rebuttal of plaintiffs' expert based on the new information.

-13-

advisory committee's note (stating that the threat of "[r]evised Rule 37(c)(1) [is to] provide an incentive for full disclosure"). See also Richard M. Heimann & Rhonda L. Woo, Import of Amended Federal Rule of Civil Procedure 26(a), 506 PLI/Lit 279, 293 (July-Aug. 1994) (stating that the availability of the automatic sanctions pursuant to Rule 37(c)(1) "put[s] teeth into the rule"). The purpose of a "detailed and complete" expert report as contemplated by Rule 26(a), Fed. R. Civ. P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial. See Klonski, 156 F.3d at 269; Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995). See also Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (stating that "[t]his sort of disclosure is consonant with the federal courts' desire to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent"). Failure to include information concerning the retained expert that is specifically required by Rule 26(a)(2)(B) -- such as "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding for years", see Rule 26(a)(2)(B) --

frustrates the purpose of candid and cost-efficient expert discovery.

As discussed, _infra_, the district court was entitled to conclude on this record, as it did conclude, that plaintiffs' failure to comply with the automatic disclosure rule of Rule 26(a) was both without substantial justification and not harmless. For this, the district court – after hearing argument from both sides – sanctioned the plaintiffs by excluding their expert testimony entirely, a harsh sanction to be sure, but one that is nevertheless within the wide latitude of the rule.[6] See Fed. R. Civ. P. 37(c) (incorporating Rule 37(b)(2)(B) which authorizes the district court to prohibit the offending party from introducing designated matters in evidence). See also Sheek v. Badger, 235 F.3d 687, 694 (1st Cir. 2000) (stating that after the district court made a finding that the defendant failed to supplement its expert report as required by the automatic expert disclosure requirements, under Rule 37(c) the district court could have excluded the expert from testifying entirely – "a sanction well within the district court's scope of

---

[6] We need not determine whether the exclusion of plaintiffs' expert was specifically authorized and directed by Rule 37(c)'s prohibition against the use of "any witness or information not so disclosed." Whether or not this first sentence of Rule 37(c) applied, exclusion of the expert and dismissal of the case was clearly authorized under subparagraphs (B) and (C) of subdivision (b)(2) of Rule 37, incorporated into 37(c).

-15-

discretion" – but chose only to exclude those portions of the expert's testimony based on the undisclosed information); <u>Samos Imex Co.</u> v. <u>Nextel Co.</u>, 194 F.3d 301, 305 (1st Cir. 1999) (citing Rule 37(c) as authority for the proposition that "as amended, the civil procedure rules make clear that exclusion of evidence [such as an expert's testimony] is a standard sanction for a violation of the duty of disclosure under Rule 26(a)"); <u>Sears Roebuck & Co.</u> v. <u>Goldstone & Sudalter</u>, 128 F.3d 10, 18 n.7 (1st Cir. 1997) (affirming the district court's exclusion under Rule 37(c) of expert testimony because the proffering party failed to disclose the expert's identity in the beginning of the litigation, although the identity was later disclosed); <u>Thibeault</u>, 960 F.2d at 245 (affirming the trial court's preclusion at trial of plaintiff's expert testimony for failure to supplement interrogatories concerning expert's proposed testimony).  On this well-developed record indicating that the plaintiffs' disregard of discovery rules was egregious and may have been deliberate and willful, we cannot say this sanction was an abuse of discretion.  <u>See</u> <u>Grajales-Romero</u> v. <u>American Airlines, Inc.</u>, 194 F.3d 288, 297 (1st Cir. 1999)("A district court's rule 37 sanctions decision is reviewed for abuse of discretion.").  We, therefore, affirm the district court's ruling excluding plaintiffs' expert testimony under Rule 37(c).

The district court never reached the merits of the other motions to compel – the subject of which was the misstatement and absence of information from answers to interrogatories regarding Rosa Rivera's extensive hospitalization – because, on the second day of the scheduled trial, the court concluded that without plaintiffs' expert witness, they could not make out their EMTALA claim and thereby dismissed the plaintiffs' case.  In so doing, the district court was responding to yet another pending motion -- defendant's motion to dismiss.[7]  This is apparently because of the crystalizing situation – discussed at length during the previous day's hearing and raised again the second day of trial – that without their expert, the plaintiffs were not going to be able enter into evidence the documents and testimony that would support its EMTALA claim.  As the district court said on that last day:

> You have been made aware at least since last
> summer of the deficiencies in the discovery
> provided by the plaintiffs . . . .  I think
> you are aware of the rule now that you come
> in today with that belated[] case list
> . . . and I think what you are trying to do
> is play around with the Court.  Even if I
> . . .  allowed the medical record to come

---

[7] On the first day of trial, before hearing the parties on the outstanding motions to compel, the district court explicitly acknowledged defendant's motion to dismiss, saying that "the matter is under advisement."  See supra note 2.

-17-

in, there is no way that you can prove [an EMTALA violation]. A proffer is not sufficient. A proffer in trial does not supply whatever is missing from the witnesses . . . . [A]nd even if you [rely on] an adverse witness, . . . . that adverse witness is going to tell you that they followed the protocol and they rendered an appropriate medical screening] . . . . That is if I allowed you do that which I am not going to allow you to do . . . .

. . . .

It is a shame, I am really sad and sorry to see that such practice has occurred in my courtroom but that is the ruling of the court so since you will not have any testimony of . . . a medical expert and since you cannot prove that it was an EMTALA violation and since there is a motion to dismiss pending by counsel for the defendants, with this turn of events I am going to grant the motion to dismiss and I am going to enter a judgment in favor of the defendant dismissing this case at this moment. There will be no more jury trial, I am granting defendant's motion to dismiss for failure to state that claim under which relief can be granted in view of the fact that you have no evidence to prove the EMTALA violation.

Without an expert witness through which to enter medical records or provide an opinion in support of their allegations that the defendant failed to "appropriately screen" and "stabilize" Rosa Rivera's emergency condition, allegedly causing her death, plaintiffs could not satisfy their burden of

proving an EMTALA violation. We find no legal error in the district court's ruling dismissing plaintiffs' case.[8]

Plaintiffs' last attempt at salvaging their case is to argue that the district court abused its discretion when it dismissed plaintiffs' case with prejudice. Plaintiffs argue that dismissal with prejudice is too harsh a sanction because the discovery problems were caused by justifiable misunderstandings and because, plaintiffs believe, defendant will not be prejudiced should plaintiffs be permitted to reinstate their case. We disagree. Conduct which may warrant dismissal of a claim with prejudice includes "disobedience of court orders, [disregarding] warnings, [and] contumacious conduct...." Figueroa Ruiz v. Alegria, 896 F.2d 645, 648 (1st Cir. 1990) (quotation marks omitted). The district court made explicit and lengthy findings of egregious discovery abuses by the plaintiffs that support precisely this standard. The district court was well within its discretion in concluding that

---

[8] Although it is true, as appellants points out, that the effect of excluding their expert was to dismiss their case, we note that dismissal of the case is one of the sanctions provided by Rule 37(c)(1), as it incorporates 37(b)(2)(C) into its arsenal. See Rule 37(c). See also Damiani v. Rhode Island Hosp., 704 F.2d 12, 15 (1st Cir. 1983)(discussing the Supreme Court's ruling in National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639 (1979) as "a turning point in the law on the use of the sanction of dismissal for failure to obey a discovery order").

plaintiffs' disregard for their obligations under the Federal Rules of Civil Procedure warranted the most severe sanction. See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 691-92 (1st Cir. 1993) (upholding a dismissal with prejudice under Fed. R. Civ. P. 16(f) for party's failure to appear at the scheduled pretrial and settlement conference, his failure to prepare a pretrial order, and his failure to otherwise comply with the court's orders); Barreto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir. 1990) (taking note of the "well established principle that discovery orders, other pre-trial orders, and, indeed, all orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation" and holding that dismissal was warranted to deter litigants from misconduct impeding the court's ability to manage its limited resources).

For all of these reasons, we **affirm** the judgment below. Costs to appellees.