# United States Court of Appeals
## For the First Circuit

No. 01-1109

LILY LAPLACE-BAYARD, ET AL.,

Plaintiffs, Appellants,

v.

DR. FRANCISCO BATLLE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lipez, Circuit Judge.

Alexander H. Bopp, with whom Indiano & Williams, P.S.C. was on brief for appellants.
Jorge J. López López, with whom Ramonita Dieppa González and Otero & López, L.L.P. were on brief for appellee.

July 16, 2002

**LIPEZ, Circuit Judge**. This is an appeal from a no-liability jury verdict in a medical malpractice case. Plaintiffs-appellants -- Lily LaPlace-Bayard, her husband Daniel Bayard, and their conjugal partnership (collectively "plaintiffs") -- brought this diversity action in negligence against, inter alia, defendant-appellee, Dr. Francisco Batlle, alleging that Dr. Batlle breached the duty of care owed to his patient LaPlace-Bayard when he failed to timely diagnose her condition and perform immediate remedial surgery, causing her substantial injury. After trial, the jury returned a verdict for Dr. Batlle, and judgment was accordingly entered in his favor. On appeal, plaintiffs seek a new trial on the grounds that the trial court abused its discretion by (1) excluding the testimony of one of their proposed medical experts and (2) allowing Dr. Batlle to testify as an expert witness. Unpersuaded by plaintiffs' arguments, we affirm.

**I.**

In the summer of 1998, when LaPlace-Bayard and her then-fiance Daniel Bayard were residents of the U.S. Virgin Islands, LaPlace-Bayard was diagnosed with a cyst on one of her ovaries. Upon consultation with a gynecologist in Puerto Rico, LaPlace-Bayard decided to undergo surgery to have the cyst removed. The surgery took place on August 6, 1998, at Auxilio Mutuo Hospital in Puerto Rico. It is undisputed by the parties to this appeal that, during surgery, the operating physician inadvertently perforated LaPlace-Bayard's colon in removing the cyst. That perforation went unnoticed, however, and LaPlace-Bayard was discharged from the

-2-

hospital later that day. Complaining of abdominal pain and fever, LaPlace-Bayard returned to the hospital on August 7, 1998, where she was seen by, inter alia, an emergency room surgeon, Dr. Batlle, who diagnosed her as suffering from "acute abdomen," an intra-abdominal condition manifested by severe pain. On August 8, 1998, Dr. Batlle performed exploratory surgery on LaPlace-Bayard and, upon discovery, repaired the perforation in her colon.

Following surgery, Dr. Batlle, as her attending physician, had primary responsibility for LaPlace-Bayard during her post-operative stay in the hospital. Given the risk of infection associated with colon perforation reparation, Dr. Batlle put LaPlace-Bayard on a regimen of antibiotics and arranged for a consultation with an infectious disease specialist. After her discharge from the hospital on August 16, 1998, she returned to her residence in St. Thomas. However, she continued to experience nausea, abdominal pain and difficulty breathing. As a result, on August 23, 1998, LaPlace-Bayard admitted herself into Palms West Hospital in Florida, where she was treated for acute pancreatitis, severe pleural effusion (fluid in the thoracic cavity), suppurative peritonitis (infection in abdominal cavity), and a serious bacterial infection. She was discharged from Palms West on September 1, 1998.

On August 5, 1999, plaintiffs brought this medical malpractice action against, inter alia, Auxilio Mutuo Hospital, Dr. Batlle, and several other physicians, alleging negligence in the care and treatment of LaPlace-Bayard at Auxilio Mutuo Hospital in

-3-

August 1998. Specifically with respect to Dr. Batlle (the only defendant relevant to this appeal), plaintiffs claimed in their pre-trial submission that Dr. Batlle, upon diagnosing LaPlace-Bayard with "acute abdomen" on August 7, 1998, should have immediately diagnosed a perforated colon and performed remedial surgery. He failed to do so and instead waited over twelve hours before performing the surgery.[1] That delay caused additional fecal material to leak into LaPlace-Bayard's abdominal cavity, exacerbating the infection. Plaintiffs alleged that Dr. Batlle thus breached his duty of care owed to LaPlace-Bayard under Puerto Rico law, specifically 31 L.P.R.A. § 5141,[2] and caused her severe physical injury and emotional pain. Dr. Batlle responded that he was not negligent in his care and treatment of LaPlace-Bayard and that LaPlace-Bayard was largely at fault for her damages because she failed to follow the instructions provided by her physicians.

Over the course of the litigation, the parties engaged in settlement discussions. By August 16, 2000, plaintiffs had reached

---

[1] The parties disagree as to why Dr. Batlle did not perform surgery sooner. LaPlace-Bayard claims that Dr. Batlle should have performed surgery immediately on August 7, 1998, when he diagnosed her with "acute abdomen." According to Dr. Batlle, however, he did in fact recommend surgery to LaPlace-Bayard on August 7, but she did not consent to surgery until August 8.

[2] Section 5141 provides:

A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

31 L.P.R.A. § 5141.

-4-

a settlement[3] with all of the defendants, except for Dr. Batlle. Previously, in a scheduling order dated January 26, 2000, the court had informed the parties that a pre-trial conference was to be held on August 22, 2000, and directed them to file a Joint Proposed Pre-trial Order in advance of that conference. On August 18, 2000, plaintiffs informed the court that (1) a settlement had been reached with four of the five named defendants; (2) they were hopeful that a Joint Proposed Pre-Trial Order would not have to be filed in this case because a settlement with Dr. Batlle, the sole remaining defendant in the case, seemed imminent; and (3) in the event a settlement was not reached with Dr. Batlle by August 21, 2000, the proposed pre-trial order would be submitted at that point.

On August 22, 2000, the pre-trial conference was cancelled because of Hurricane Debby. On August 23, 2000, Dr. Batlle sent a letter to plaintiffs categorically rejecting any settlement demand. The next day, plaintiffs filed (1) a motion to reschedule a pre-trial/settlement conference and (2) given defense counsel's unwillingness to participate in a joint submission, a unilateral proposed pre-trial order, listing Dr. Vilaire Bayard, Jr., M.D.,[4] a Massachusetts-based surgeon, as their only expert witness. Dr. Batlle did not list any expert witnesses in his pre-trial submission.

---

[3] That settlement was finalized on August 24, 2000.

[4] Dr. Bayard and Daniel Bayard are second cousins.

On October 16, 2000, the court held a status conference. Plaintiffs informed the court that settlement efforts with Dr. Batlle had been unsuccessful to date, but that they were not prepared for trial. Nevertheless, the district court issued an order which provided:

> This case has been settled as to all defendants except Dr. Francisco Batlle-Batlle. The demand against this physician is $20,000. The court strongly recommends that the case be settled in that amount . . . . 10 days to report. Trial shall be held Nov. 2, [20]00, 9:30 A.M.

Accordingly, plaintiffs gave Dr. Batlle until October 25, 2000, to accept the settlement demand. On that date, Dr. Batlle again flatly rejected the settlement demand, setting in motion a flurry of trial preparation activity, including the following: (1) on October 26, plaintiffs filed an emergency motion to take a videotaped deposition of Dr. Bayard and to substitute that deposition for his live testimony, due to his unavailability to appear at trial; that motion was granted over defendant's objection, and the deposition was taken on October 31 in Worcester, Massachusetts; (2) also on October 26, plaintiffs notified the court of their intention to name an additional medical expert witness, Dr. Claudia Lorenzo Pérez, M.D. (Dr. Lorenzo) and the next day filed a motion to supplement their proposed pre-trial order to include Dr. Lorenzo as an expert witness. In opposition to that motion, Dr. Batlle filed an in limine motion to bar Dr. Lorenzo from testifying at trial.

The trial commenced on November 2, 2000. At trial, Dr. Bayard, via his October 31 videotaped deposition, provided expert testimony on behalf of plaintiffs on the applicable duty of care owed by Dr. Batlle to LaPlace-Bayard. Upon the close of Dr. Bayard's testimony, the court, granting Dr. Batlle's in limine motion, barred Dr. Lorenzo from testifying as an expert witness in plaintiffs' case. In defendant's case, Dr. Batlle testified on his own behalf but presented no independent medical expert testimony. The jury returned a no-liability verdict for Dr. Batlle and judgment was entered accordingly. This appeal ensued.

## II.

Plaintiffs raise two issues on appeal as grounds for a new trial. First, they argue that the court improperly excluded testimony of Dr. Lorenzo, one of their two proposed medical expert witnesses. Second, they claim that Dr. Batlle testified as an expert witness and should not have been allowed to do so.

## A. Exclusion of Dr. Lorenzo's Medical Expert Testimony

The court explained its decision to exclude Dr. Lorenzo's testimony as follows:

> I have read the doctor's report, and I have a serious concern about the fact that this case has been on the docket for quite a while. And the truth of the matter is that everybody left expert retaining and preparation for the very last minute. Perhaps everybody thought the case would settle. I'm not trying to find fault here, but the truth of the matter is that since October 16th it was quite evident that this case could be tried, especially when it did not settle as to one of the co-defendants. And I find it a bit difficult to

-7-

> accept that somebody who is retained in the middle of taking Dr. Bayard's deposition on October 30th and October 31st is going to testify now and has not been consulted before. And I think it's quite cumulative, also. And I have read [Dr. Lorenzo's] report, and I don't see anything there that [Dr. Bayard] has not covered.

There are two grounds for the exclusion of Dr. Lorenzo's testimony apparent from this ruling: (1) plaintiffs failed to timely announce their intention to use Dr. Lorenzo as an expert witness, and (2) Dr. Lorenzo's anticipated testimony (as evidenced from her expert report) would be cumulative of Dr. Bayard's expert testimony, already admitted into evidence by videotape deposition. We examine each rationale in turn.

### 1. Untimely Disclosure

The court's exclusion of Dr. Lorenzo's testimony on the ground of untimely disclosure is a discovery sanction under Fed. R. Civ. P. 37(c)[5] for a violation of the mandatory discovery rules

---

[5] Rule 37(c) provides in relevant part:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.
Fed. R. Civ. P. 37(c).

-8-

under Fed. R. Civ. P. 26(a)(2).[6]  We review that ruling under an abuse of discretion standard.  See Thibeault v. Square D Co., 960 F.2d 239, 243 (1st Cir. 1992) ("In reviewing a trial court's sanction order concerning a discovery-related matter, an abuse-of-discretion standard controls.").

Rule 26(a)(2) mandates the timely disclosure of the identity of expert witnesses as well as expert reports in accordance with the directions of the trial court.  Here, the district court, in its January 26, 2000, scheduling order, directed the parties to identify their expert witnesses and summarize each expert witness's qualifications in a joint proposed pre-trial order to be filed no later than August 18, 2000.  In their August pre-trial memorandum, however, plaintiffs listed Dr. Bayard as their only expert witness.  It was not until October 26, 2000, barely a week before trial, that plaintiffs disclosed their intention to use

---

[6] Rule 26(a)(2) provides in relevant part:

> [A] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. . . . [T]his disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. . . . These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial . . . .

Fed. R. Civ. P. 26(a)(2).

Dr. Lorenzo as an expert witness.[7]  Until then, Dr. Batlle had no notice of plaintiffs' intention to retain another medical expert witness.  Dr. Lorenzo's expert report and curriculum vitae were not provided to Dr. Batlle until the night of October 30, 2000, a mere three days before trial.

Plaintiffs argue that their failure to comply with the discovery rules in a more timely manner was justified by the "unusual" circumstances of the case, described as the likelihood of settlement with all of the defendants.  Given that likelihood, they opted not to retain Dr. Lorenzo earlier in the litigation in an effort to keep costs down, thus maximizing the possibility of settlement.  Only on October 25 when Dr. Batlle unequivocally rejected the $20,000 settlement demand did they retain Dr. Lorenzo as an expert and expedite the production of expert reports.

That justification, however, is woefully inadequate to excuse plaintiffs' tardy disclosures.  Litigants routinely engage in settlement negotiations until the eve of trial and beyond.  That reality does not excuse them from responding to interrogatories and retaining experts and disclosing them and their reports to opposing counsel in a timely manner pursuant to the discovery rules.  Plaintiffs simply chose to postpone the costs associated with retaining an expert in an attempt to increase, in their view, the likelihood of settlement.  In doing so, they assumed the risk that their delayed trial preparation would compromise their ability to

---

[7] On October 27, 2000, plaintiffs moved to supplement their pre-trial order to add Dr. Lorenzo as a second expert witness.

put on their best case. To excuse their belated disclosures now would relieve them of the consequences of the risk they assumed.

Furthermore, we have recognized that "[i]n the arena of expert discovery -- a setting which often involves complex factual inquiries -- Rule 26 increases the quality of trials by better preparing attorneys for cross-examination." Id. at 244. We cannot ignore the real danger that, if Dr. Lorenzo had been allowed to testify, plaintiffs' belated disclosures would have undermined defense counsel's ability to cross-examine her. See id. at 246-47 ("Many courts -- this court included -- have recognized the introduction of new expert testimony on the eve of trial can be seriously prejudicial to the opposing party.").

As noted above, district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations. See Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 34 (1st Cir. 2001). These sanctions range from limited exclusion to dismissal of the case entirely. See id. "[E]xclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)." Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301, 305 (1st Cir. 1999). Given the facts in this case, we could hardly say that the district court exceeded its discretion in excluding Dr. Lorenzo's testimony.

2. Cumulativeness

For the sake of completeness, and to dispel any notion of plaintiffs that the exclusionary ruling of the trial court was

-11-

somehow unfair to them, we evaluate the court's second ground for excluding Dr. Lorenzo's testimony, namely, that it would have been cumulative under Rule 403 of the Federal Rules of Evidence in light of the testimony of Dr. Bayard, plaintiffs' other medical expert.

Plaintiffs insist that the court did not understand the full scope of their case. They claim that their case against Dr. Batlle was premised upon two discrete negligence theories of liability to be addressed separately by each expert. Dr. Bayard, trained as a surgeon, testified only as to Dr. Batlle's negligence in his capacity as LaPlace-Bayard's surgeon. Dr. Lorenzo -- an alleged expert on matters of risk management and the administration of health institutions -- would have testified as to the negligence of Dr. Batlle in his role as LaPlace-Bayard's attending physician and in managing the post-operative risks associated with her condition. Thus, having retained two separate experts to serve two distinct purposes, plaintiffs maintain that Dr. Lorenzo's testimony would have differed dramatically from that of Dr. Bayard.

Plaintiffs overstate the pre-trial clarity of their two discrete theories of Dr. Batlle's liability. In their pre-trial submission, they articulated only one theory of liability to the trial court -- namely, that Dr. Batlle was negligent in his role as LaPlace-Bayard's surgeon:

> Dr. Batlle noted acute abdominal pain and high fever. Dr. Batlle should have immediately diagnosed a punctured colon and performed immediate remedial surgery. <u>As a result of Dr. Batlle's failure to timely diagnose [LaPlace-Bayard's] punctured colon and his failure to timely perform corrective surgery</u>, she suffered permanent and irreparable

-12-

> physical injuries, and continues to suffer
> both substantial emotional and physical pain.

(emphasis added). In that submission, plaintiffs further characterized the ultimate facts in dispute as "the extent of the damage <u>caused by the delay in performing corrective surgery</u> after [LaPlace-Bayard] presented herself at the emergency room with acute abdominal pain." (emphasis added). There is no mention in plaintiffs' pre-trial memorandum that their theory of the case included Dr. Batlle's negligence in LaPlace-Bayard's post-operative care, including managing the risks associated with her post-operative condition. In the absence of such timely representations to the court below, we doubt that plaintiffs could rely on that broader theory of liability now to win a new trial. <u>See</u> <u>Thibeault</u>, 960 F.2d at 247 (noting potential for prejudice to opposing counsel in "an eleventh-hour change in a party's theory of the case").

We need not decide that issue, however, because Dr. Bayard did present testimony on Dr. Batlle's post-operative negligence, as plaintiffs said he would. Contrary to their position on appeal, plaintiffs explicitly stated in an October 26, 2000, court submission that "Dr. Bayard will serve as the Plaintiffs' expert on surgery and the quality of aftercare rendered post-operatively by Dr. Battle [sic]." Similarly, plaintiffs' counsel explicitly stated at Dr. Bayard's October 31 deposition his intention to use Dr. Bayard both "as an expert in this trial with respect to the surgical procedures, and the quality of after-care that was rendered by the surgeon, Dr. Francisco Batlle." The record indicates that Dr. Bayard did in fact provide expert opinion

-13-

testimony on both the August 8 surgery as well as the quality of after-care provided by Dr. Batlle in his role as attending physician.

With respect to the surgery, Dr. Bayard testified that, when a patient presents with acute abdomen after recently undergoing surgery to remove an ovarian cyst, a physician should suspect a perforated bowel and should perform surgery immediately. He testified that there was no medical justification for Dr. Batlle's waiting twelve hours to perform the surgery. His testimony, however, did not end there. Dr. Bayard proceeded to testify as to (1) the diagnostic lab tests that should have been performed on LaPlace-Bayard in the days following the August 8 surgery; (2) his opinion on the range of antibiotics Dr. Batlle administered to LaPlace-Bayard after surgery; and (3) his opinion that Dr. Batlle should have taken a culture of the infection observed during surgery in order to know what antibiotics to administer. He testified that LaPlace-Bayard should not have been discharged from the hospital on August 16, 1998, because it was likely she was suffering from acute pancreatitis and other conditions at that time. In light of Dr. Bayard's testimony as to LaPlace-Bayard's post-operative care, we can hardly find fault with the district court's finding that Dr. Lorenzo's proffered testimony would have been cumulative evidence.

In a further effort to distinguish Dr. Lorenzo's testimony from that of Dr. Bayard, plaintiffs argue that Dr. Bayard's credibility may have been diminished because (1) he was

-14-

plaintiff Daniel Bayard's second cousin, and (2) Dr. Bayard, unable to read Spanish, was limited in his review of the medical file to those records that were in English. Thus, plaintiffs argue, the testimony of Dr. Lorenzo (who was fluent in Spanish and thus able to review the entire medical file) would have bolstered the strength of their case. Again, plaintiffs seek relief from the consequences of their own decisions. Plaintiffs chose to disclose in their pre-trial submission only one medical expert witness, knowing of his inability to understand Spanish and of his relationship to Daniel Bayard. Moreover, plaintiffs could have provided Dr. Bayard with an English translation of the Spanish portions of the medical record. They chose not to do so. Having made these decisions, they cannot complain now of the consequences.

Finally, plaintiffs claim that even if the exclusion of Dr. Lorenzo's testimony was otherwise warranted, the timing of the court's ruling irreparably prejudiced them. They point out that, although Dr. Batlle had filed his motion to exclude Dr. Lorenzo's testimony before trial had commenced, it was not until after the court heard Dr. Bayard's videotaped deposition testimony that it announced its decision to exclude Dr. Lorenzo's testimony. At that point, however, plaintiffs had already told the jury in their opening statement that it would hear testimony from "experts" in the plural. They now claim that the court's ruling prevented them from keeping their promise of introducing testimony from more than one expert, thus undermining their credibility with the jury.

-15-

At the time that plaintiffs gave their opening statement, they knew that the court had not yet ruled on Dr. Batlle's motion to exclude Dr. Lorenzo's testimony.  Well aware of that pending in limine motion, plaintiffs proceeded at their peril in promising the jury testimony from more than one expert.  Having made that choice, plaintiffs cannot expect once again to be relieved of the consequences of their own judgment call.

## B.  Admission of Dr. Batlle's Testimony

In considering plaintiffs' second ground for appeal, we note at the outset that the court never characterized Dr. Batlle as an expert witness, stating instead that Dr. Batlle would be "treated as the surgeon who operated on" LaPlace-Bayard. Nevertheless, plaintiffs argue that Dr. Batlle gave expert testimony at trial and should not have been allowed to do so without providing an expert report and disclosing his qualifications as required by Fed. R. Civ. P. 26(a)(2)(B).[8]

Despite these general averments, plaintiffs fail to identify which particular statements of Dr. Batlle should have been excluded.  Nor did they raise at trial any specific objections (save one as to relevancy) during the course of Dr. Batlle's direct examination.  Having carefully examined the trial transcript of Dr. Batlle's direct testimony ourselves, we cannot identify a colorable basis for plaintiffs' claim of error.

---

[8]  See supra note 5.

In his direct examination, Dr. Batlle methodically took the jury through a day-by-day account of his actions and decisions relating to the care and treatment of LaPlace-Bayard at Auxilio Mutuo Hospital from August 7, 1998, through her discharge on August 16, 1998. He was never asked on direct to render opinions regarding treatment by other physicians or other institutions. Dr. Batlle only offered opinions beyond the scope of his own treatment of LaPlace-Bayard in response to plaintiffs' own questions on cross-examination as to the treatment given to LaPlace-Bayard at Palms West Hospital after her discharge from Auxilio Mutuo Hospital.[9] Having opened the door to that testimony, plaintiffs cannot now be heard to complain about the court's admission of such testimony.[10] See McDonald v. Federal Laboratories, Inc., 724 F.2d 243, 248 (1st Cir. 1984) (rejecting claim of error in admission of expert testimony where challenged testimony was elicited by appellant's counsel); see also Aetna Casualty & Surety Co. v. Tryniecki, 293 F.2d 289, 290-91 (5th Cir. 1961) (similar result); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

---

[9] In fact, defense counsel specifically objected to that line of questioning as being outside the scope of direct examination. Those objections were overruled.

[10] In a corollary argument, plaintiffs maintain that the court abused its discretion when it failed to instruct the jury that Dr. Batlle was not testifying as an expert. We disagree. The jury heard plaintiffs' counsel explicitly state his intention to use Dr. Bayard as an expert witness. In contrast, neither the court nor defense counsel ever told the jury that Dr. Batlle would be testifying as an expert on his own behalf. Moreover, the jury knew that Dr. Batlle was the defendant. Thus, there was no need to instruct the jury that Dr. Batlle was not an expert witness in this case.

Practice and Procedure § 2885 at 463 n. 14 (2d ed. 1995) (citing cases where court refused to notice any alleged error where such error was invited by complaining party).

**Affirmed.**